Parker, C. J.,
delivered the opinion of the Court.
The objection made to the verdict in this case is, that the plaintiffs, although owners of the locus in quo, and of the buildings, fences, &c., standing thereon, cannot maintain trespass for the injury done, because they were not in the actual possession at the time; but that, if they are entitled to any action, it should be case, and not trespass. The question therefore goes simply to the form of action; there being no other complaint against the verdict.
There seems to be no doubt but that a tenant at will and his *467 landlord may both maintain actions for injuries done to * the soil, or to buildings upon it. They are both injured, [ *521 ] but in different degrees; the tenant in the interruption to his estate and the diminution of his profits, and the landlord in the more permanent injury to his property. If a house, occupied by a tenant at will or for years, should be demolished, or if the fruit or forest trees of a farm so occupied should be cut down, it is obvious that the tenant ought not to recover in damages the value of the thing destroyed; and it is equally obvious that the landlord would be entitled, upon common principles of justice, to recover indemnification for the injury done to his freehold; and there would be no difficulty in separating the damages, by the verdict of a jury, according to the respective interests of the several parties.
Originally, it would certainly have been immaterial whether the damages should be settled by an action of trespass or an action on the case; the wrong done being direct and immediate to the property damnified, both actions being founded in tort, and the plea to each being the same, as is also the principle upon which the damages would be ascertained. And even at this day, no substantial difference can be perceived between an action of trespass, and an action of trespass on the case, where the gravamen is a forcible invasion and destruction of property.
But yet it is important to preserve the ancient boundaries of actions ; and on that account it is necessary to examine authorities, to see how far the objection to this verdict can be supported.
There can be no doubt that, in the earliest times of which we have any judicial records, trespass was considered the proper action for the proprietor of a freehold to bring, when his trees were felled, or his soil subverted, or his buildings injured, notwithstanding the locus in quo were at the time occupied by a tenant at will.
In Roll’s Abridgment, which was cited in the argument of the counsel for the plaintiff, [Trespass, n. 3,] the following position is laid down: “ If a man subverts land which is under lease at will, the lessee may have one trespass against * him, [ *522 ] and shall have damages for the profits ; and the lessor may have another trespass, and shall recover damages for the destruction of the land; ” and in another place, [Ibid. n. 4,] “ If trees are cut upon the land of tenant at will by the custom, he may have an action of trespass, and the lord also another action; ” and it is added, [Ibid. n. 5,] “ The law is the same as to tenant for years.” Having adopted this as a text, the compiler cites, in support of it, a decision made in the reign of Henry VI. And upon looking into the Year-Books, we find an opinion delivered by one of the judges arguendo, according to the custom of those times, to the following *468 effect: “ If I lease land to a man at will, and a stranger comes upon the land, and digs and subverts it, the tenant at will shall have an action of trespass, and I also another action of trespass, and so the trespasser shall be twice punished for the same trespass in different respects ; viz., by the tenant for the damage done to him, inasmuch as he cannot have the profits of the land by reason of the subversion; and I shall receive my damages for the destruction of the land.” And the reporter adds, “ quad conceditur per totam curiam.”
Certainly no principle of the ancient common law can be traced more satisfactorily up to a legitimate origin than this; and we find, in consequence, that most of the diligent and critical compilers, down to a very late period, have admitted this as a principle, and have referred their readers to this case, in the time of Henry VI, as the authority establishing it.
I have before cited Roll for this purpose, and he lays down the position unequivocally. Viner, in his Abridgment, (4) has introduced the same principle, referring to the same authority. And Chief Baron Comyns, in his Digest, (5) has adopted the same doctrine, referring to Roll, and sanctioning the rule by a reason not to be found in Roll, viz., that the possession of the lessee at will is the possession of the lessor.
In addition to these, it may be observed that Hargrave and Butler, the learned editors of Coke’s Commentary upon [ * 523 ] * Littleton, have in a note expressed themselves in the following words: “ If a stranger cuts down trees on land leased, lessor and lessee may both have actions to recover their respective loss.” (6) Now, although it is not here said that this action shall be trespass, yet, as they cite, in support of the position, the case referred to of 19 H. 6, in which trespass is the action expressly said to lie for the lessor as well as the lessee, this ought to be considered an additional authority, and it certainly is a respectable one, in favor of the action. And Sergeant Williams, in his notes upon Saunders’s Reports, has adverted to the same doctrine, founding himself on the note of Hargrave and Butler. (7)
Upon this review of authorities, it would seem hardly possible to doubt, that the law, as laid down by Roll, was still recognized, and might safely be relied upon. But as a very respectable modern writer upon pleading has advanced a different doctrine, although he has not shown any decision of a court, overruling the cases above cited; and as a very learned bench in a neighboring state has *469 expressly decided, that an action of trespass, under such circumstances, will not lie; it is proper to consider the authorities relied upon by the counsel for the defendant, and see how far they controvert the doctrine which seems to have been so deliberately established.
Chitty, in his Essay upon Pleading, speaking of the action of trespass quare clausum, says, “ The gist of the action is injury to the possession; and unless, at the time the injury was committed, the plaintiff was in the actual possession, trespass cannot be supported.” So far he lays down only a general position, which need not be denied; for, as Chief Baron Comyns observes, the possession of a tenant at will is the possession of his landlord; and so the lessor or landlord may be said to be in the actual possession. But he proceeds, “ Therefore a landlord cannot, during a subsisting lease, support trespass; but the action must be in the name of the tenant, or the landlord must proceed in case, unless committed to trees, &c., excepted in the lease, when * the latter [ * 524 ] may support trespass quare clausum.” Even this, however, does not amount to a denial of an action of trespass to the landlord, when the locus in quo is occupied by a tenant at will only, because he speaks of a subsisting lease, contemplating, without doubt, an estate for years at least in the tenant. And if it should be true .that a lessor for life or years cannot maintain trespass, it would not necessarily follow that the landlord of an estate at will shall not have that action.
But, in a case which came before the Supreme Court of the state of New York, 1806, where trespass was brought by the owner of the land, for an injury done while it was in the occupation of a tenant at will, it was expressly decided that case, and not trespass, was the proper remedy ; on the ground that there must be possession in fact of the real property to which injury was done, in order to entitle a party to maintain an action of trespass quare clausum fregit. (8) And this decision was recognized in a subsequent case, (9) in which Kent, C. J., stated that he had doubted when the question first arose, but had fully adopted the opinion of the rest of the court.
Although, from the report of the above case, it does not appear that a very minute investigation of the subject was had by the judges, yet it is to be presumed that the opinion there declared was the result of an accurate examination of all the decisions upon the subject; and this case must therefore be deemed a very strong authority against the action of trespass.
But after the most careful examination of the subject, we have *470 come to a different result from that which has been adopted by that respectable court. The case principally relied on by the court, and by Wooddeson in his lectures, (10) who has asserted the same doc- > trine, was probably that in Levinz; where case was brought by one alleging himself to be seised in fee of a close, and that the defendant, occupying the adjoining close, had stopped a rivulet, whereby his trees were drowned and rotted. The defendant pleaded that the plaintiff’s father had, a long time before, leased [ * 525 ] * to another, who was in possession at the time, and that he had made satisfaction to the tenant; held to be no plea, and the plaintiff recovered. And the reporter adds, of his own authority, that the plaintiff, during the term, could not have maintained trespass, being founded only in the possession. (11)
In the first place, it may be observed that, for the injury there complained of, case was the proper remedy, whether the lessor or lessee had been the plaintiff; because the injury was consequential, and not direct. But it may also be observed that, according to the pleadings, this was a case in which the plaintiff, who was heir to the lessor, never had entered, nor had he any actual possession ; and it is believed that all the cases, which speak of a possession as necessary to maintain trespass, are those where the party has had a right descended to him, or has acquired one, but has never entered upon the land, or had any actual possession. Thus we find, in Roll, and Viner, and Comyns, when they speak of possession as the essential ingredient in trespass, they instance an heir, who shall not have trespass against an abator; or a bargainee, who has never entered ; and also a reversioner, referring undoubtedly to the owner after an estate for life, or at least for years; but not contradicting, in any degree, the position first laid down by them, relative to the right of a lessor of an estate at will to maintain this action.
The same observation will apply to the dictum of Justice Lawrence, quoted by the counsel for the tenant, and cited by Chitty, viz., “ Trespass can only be maintained by him who is possessed of the land.” For in the case then before him, he was considering what rights remained to a corporation who held certain lands, in trust to be parcelled out every year, and occupied in severalty by the several members of the corporation. And, indeed, Sir William Blackstone, in his chapter upon trespass, speaking of possession as necessary to the maintenance of an action of trespass, adopts the same idea, viz., that an heir, to whom a right has descended, [ * 526 ] * cannot maintain that action against an abator. The same learned author says, “ It is a settled distinction, that *471 where an act is done, which is in itself an immediate injury to another’s person or property, there the remedy is usually by an action of trespass vi et armis ; but where there is no act done, but only a culpable omission, or where the act is not immediately injurious, but only by consequence and collaterally, there no action of trespass vi et armis will lie, but,” &c. (12) And in another place, (13) “ One must have a property, (either absolute or temporary,) in the soil, and actual possession by entry, to be able to maintain an action of trespass, though he hath the freehold in law. And therefore an heir before entry cannot have this action against an abator.”
The whole doctrine to be gathered from all the authorities which have been cited, and others which seem to bear upon the point, amounts to this only ; that possession of the locus in quo must be in the plaintiff in the action of trespass. And if it is right to consider the possession of a tenant as the possession of him who has the freehold, the old cases, which explicitly allow this action to the lessor, do not in any degree controvert the doctrine. Perhaps some difficulty would exist technically in case of a trespass committed upon soil, while in the actual possession of a lessee for years; because the lessor has not the right of entry, and therefore it may not be considered as his close which was broken and entered. And yet, even in such a case, for a kind of trespass which should be injurious principally to the lessor, such as cutting down the trees, or overturning the buildings, as he would have a right to be indemnified by action, and as the act would be directly injurious to him, it would seem an unnecessary nicety to confine him to an action on the case. But where the occupant has only an estate at will, which may at any moment be terminated, and where the injury is of a sort to determine the estate, the very thing being destroyed which was the subject of it, it partakes too much of refinement to say that the close broken is not the close of the * owner [ * 52? | of the freehold, and that the injury done is not a trespass upon his property.
A disseisee may maintain trespass for injurious acts subsequent to the disseisin, and acts done while he was out of possession, after he has reentered. (14) Here he certainly had not the possession in fact at the time; but the injury was done to his property, and it was direct and immediate; it therefore had all the qualities of trespass. So, in the case of the destruction of a house occupied by a tenant at will, the injury is direct and immediate to the owner; it puts an end to the estate, and deprives him of the rents and profits, by a forcible act. No one but himself can recover the value of the *472 property destroyed; and there seems to be no reason why he shal not maintain an action so suitable to his purposes as trespass.
Upon the whole, we are satisfied with the ancient law upon this subject; especially as we do not find it directly overruled in the courts of that country where it was established; and we are moreover satisfied, that the doubts about the action have arisen rather from general positions, true in themselves, which have been laid down by respectable writers, who did not find it necessary to their purpose to consider all the exceptions which existed at the common law, rather than from any decision of any court, at any time, against the form of action. We therefore think there is no legal objection to this verdict, and that judgment ought to be entered upon it. (a)

Judgment according to the verdict.

 Vin. Mr., Trespass, n. 3, 4.

 Com. Dig. tit. Trespass, b, 2

 Co. Lit. 57, a, note 2.

 1 Saund. 322, a, note 5.

 1 Johns. 511.

 3 Johns. 468.

 3 Wood. 193.

 3 Lev. 209, Biddeford vs. Onslow

 3 Black. Comm. 123.

 Ibid. 210.

 3 Black. Comm. 210

 Sed vide, contra, Revett vs. Brown, 5 Bingh. 7. — The King vs. Watson, 5 East, 485. — Harper vs. Charleworth, 4 B. & C. 574. — Bertie vs. Beaumont, 16 East, 33. — Lambert vs. Stroother, Willes, 221. — Dyson vs. Collick, 5 B. & A. 600.— The Duke of Newcastle vs. Clarke, 2 Moore, 666. — 8 Taunt. 602. — Chitty, 72, 202, 3d edit.— Turner vs. Meymott, 7 Moore, 574.—1 Bingh. 158. — Taunton vs. Costar, 7 D. & E. 431. —Butcher vs. Butcher, 7 B. & C. 399. — Bulwer vs. Bulwer, 2 B. & A. 270. — Hollis vs. Goldfinch, 1 B. & C. 205.—2 Phill, Ev. 7th edit. 184. — Shenk vs. Mundorf & Al. 2 Brown Pen. R. 109. — Herr vs. Slough, 2 Bro. Pen. R. 111. — Addleman vs. Way, 4 Yeates, 218.— Cooke vs. Thornton, 6 Rand. 8.— Truss vs. Old, 6 Rand, 556.—Austin vs. Sawyer, 9 Cowen, 39. — Stuyvesant vs. Dunham, 9 Johns 61