## Little *vs.* Palister.

If one enter upon land in the possession of a tenant at will, and tread down the grass, and throw down a fence erected by the tenant for his own convenience, the landlord shall not have an action for this wrong ; but the remedy belongs to the tenant, the injury being wholly to *his* rights, and not to any permanent rights of the landlord.

Trespass *quare clausum fregit.* At the trial of this cause, which was at *November* term 1822, upon the general issue, it appeared that the plaintiff had good title to the *locus in quo* ;— that early in the year 1816, one *McKenney* entered into possession of the land by verbal permission of the plaintiff, without any written lease, and for no specified time ; intending to purchase the land ; which, however, he never did ;—that he agreed to pay the plaintiff an annual rent, equal to the interest of the money, until he should purchase it ;—and that this occupancy by *McKenney* continued till the commencement of this action.

It was also admitted or proved that the only act of trespass done by the defendant, was the tearing or throwing down some

Little *v.* Palister.

parts of the fence which had been built by *McKenney* for his own use, for the purpose of inclosing the land in his own possession. For *this act* the presiding Judge instructed the jury that the plaintiff could not by law maintain this action ; and a verdict was thereupon taken for the defendant, subject to the opinion of the whole Court upon the correctness of those instructions.

*Longfellow,* for the plaintiff.

The title being admitted to be in the plaintiff, the legal inference is that the possession also was his, unless the contrary appear. Every entry, therefore, inconsistent with his rights, was a trespass. The occupancy of the land by *McKenney* does not alter the case ; for he was merely a tenant at will, or by sufferance ; his possession was that of his landlord, and the fences by him erected were annexed to the freehold, and belonged to the lessor. If the suit were for the title to the land, and the controversy related to the length of time and extent of actual possession ; the possession of the plaintiff, and its extent and duration would be ascertained by the time of *McKenney's* entry, and the location of his fence. And if this action had been brought by *McKenney,* the damages awarded to him could have been only nominal, the injury being to the freehold of the plaintiff. *Starr v. Jackson* 11 *Mass.* 519. *Danforth v. Sargent & al.* 14 *Mass.* 491.

*Fessenden,* for the defendant.

The case of *Starr v. Jackson* does not apply here, because *McKenney* was not tenant at will, but for years, or from year to year. He entered under an agreement to pay an *annual rent.*

But if he were tenant at will, yet trespass does not lie for the lessor, for an injury done to any erection made by a tenant at will. *Tobey v. Webster* 3 *Johns.* 461. *Wells v. Banister* 4 *Mass.* 514. *Taylor v. Townsend* 8 *Mass.* 411. *Fitzherbert v. Shaw* 1 *H. Bl.* 258. The fences were erected by the tenant, for his own convenience, and were removable at his pleasure ; and if the defendant is made answerable for their value to the lessor, yet the judgment will be no bar to a future action by the tenant himself.

But trespass *vi et armis* does not lie for a *lessor*. The case of *Starr v. Jackson* to this point is not supported by authorities, nor by the principles of the common law. The remedy should have been sought by an action of the case.

*Orr*, on the same side, argued against the authority of the case of *Starr v. Jackson*, to the following effect :

The subject before the Court in the present case exhibits a question of practice, not of abstract principle ; for as to this there is no dispute. It is agreed that both tenant and landlord have a remedy at law, if an injury be done to the possession of the one, or to the estate of the other. The remedy of the tenant is by an action of trespass *quare clausum fregit*, and if so, the question is, whether the same kind of action can be maintained by the plaintiff, who is the owner in fee. The injury done to the tenant is direct and immediate, and is against the peace ; it is a disturbance of his possession,—his right of quiet enjoyment ; and therefore his right of action accrues for every forcible or unauthorized entry however slight the injury may be to his possession.

But to the owner, the very foundation of this kind of action is wanting. His writ is untrue in a material part ; the *locus in quo* was not his close, but the close of his tenant ; and therefore his remedy for an injury done to the estate is by an action of trespass on the case. This distinction is material to the purposes of justice ; for an essential injury may be done to the tenant, which would be no injury whatever to the owner ; as by entering his house and beating him, or injuring his chattels. In such a case, according to the argument for the plaintiff, if the tenant could maintain this action for the actual injury done him, the owner might have the same kind of action for nominal damages, and in both cases full costs would be recovered by statute. Or in case of a slight injury, each might have the same kind of action for nominal damages. Now the liability to double costs, is alone sufficient to show that the distinction in the form of action is material to the interests of the defendant, for in an action on the case, nominal damages would not be a foundation for costs. And hence there would be justice done by the one form of action, and injustice by the other.

Little *v.* Palister.

But the case at bar does not depend on reasoning from inconvenience ; it is founded on established principles of practice. As it regards the rights of the tenant against a wrong doer, it is quite immaterial by what kind of tenure he holds. This is settled in the case of *Graham v. Peat* 1 *East* 244. And on the other hand, it is equally immaterial to the rights of the owner whether the injury be done upon the land, or an act be done elsewhere, if it occasion an injury ; his remedy is the same in either event. The case of *Jesser v. Gifford* goes to support this position. 4 *Burr.* 2141. There the principal case is to be taken in connection with the one cited by *Ashton* J. which is *Tomlinson v. Brown, H.* 28. *Geo.* 2. This latter case was for obstructing the plaintiff's lights, *and breaking his wall,* and his remedy was by any action on the case. It is expressly said by Justice *Lawrence* in *Rex v. Watson* 5 *East* 487, that trespass can only be maintained by those who are possessed of the land. At the same time the owner may always maintain an action on the case, against a wrong-doer, if the land be possessed by his tenant. 1 *Taunt.* 193, 4. *Astersoll v. Stevens.* And it has been further decided that trespass by the owner is a wrong form of action. *Wyndham v. Way* 4 *Taunt.* 316.

In answer to these authorities we are met by the case of *Starr v. Jackson* 11 *Mass.* 519. Upon this alone the plaintiff seems principally to rely ; and necessarily, for it is a case that stands alone. In that case the ancient meaning of the word " trespass" is applied to modern practice, and in this manner the action was sustained. Through the whole range of cases cited in support of that case, there is not one of them that was decided since the difference between trespass and case has been finally settled by judicial decisions ; and it is going a great way to say that trespass and case are in any instance synonimous terms in practice, because they were so in the reign of *Henry* VI. It is apparent from *Fitzherbert de natura Brevium* and Lord *Hale's* notes to that work, that torts done to real estate were blended, and passed under the general denomination of trespass.—It was so in many instances in relation to personal property. Breaking a pool whereby the stream overflowed the plaintiff's fish pond and the fish escaped ; adulterating wine, by a carrier entrusted with the

care of it ; chasing sheep with a dog, whereby they were injured ;
filling a ditch, which caused the plaintiff's land to be overflowed ;
were laid in trespass *vi et armis* ; and with some of such causes
of action might be joined a direct injury to the plaintiff's soil and
possession. *Fitz. De. Nat. Brev.* 199, *L. F.*—203, *L. M.* And
the same practice prevailed in some degree till the days of Lord
*Raymond.* In the case of *Tyffin v. Wingfield* the old practice is
clearly preserved. *Cro. Car.* 325. The action was trespass *vi et
armis* for driving the plaintiff's cattle into the close of *J. S.* who
took them damage feasant, whereby the plaintiff was obliged to
pay damages to redeem them. It was moved in arrest of judg-
ment that the declaration did not conclude *contra pacem.* But it
was adjudged that the action being laid in trespass did not make
it trespass *only*, but it might answer for an action of trespass on
the case. The case of *Dent v. Oliver* is of the same cast, and
and serves to illustrate the convertible characters of case and
trespass, in the practice of that age. *Cro. Jac.* 122. At a still
later period the same obstacle is presented to so extensive
an application of the word " trespass" as ancient authorities
authorized, and the case of *Starr v. Jackson* has admitted. In the
case of *Courtney v. Collet* 1 Ld. *Raym.* 272, trespass *vi et armis*
was held to lie for diverting a water course on the defendant's own
soil, by which the adjoining close was injured. And it will be found
to be doubtful whether Ld. *Raymond* ever settled in his own
mind the distinction as now understood, between trespass and
case, till the decision in the case of *Reynolds v. Clark* 1 *Str.* 634,
where it was held that trespass would not lie for erecting a
water spout which injured the adjoining close.

It may further be observed that the language of the ancient
law is the same in relation to tenant at will as to a mere stranger.
And yet it has never been decided that an action of trespass
*quare clausum fregit* can be maintained against tenant at will for
an act done during the tenancy. Lord *Coke* says " that if tenant
" at will cutteth down timber trees, or voluntarily pull down and
" prostrate houses, the lessor shall have an action of trespass
" against him *quare vi et armis.*" *Coke Lit.* p. 57, Sec. 71. (g).
This is substantially the same law as laid down by *Rolle* in rela-
tion to a stranger, which was relied on in support of the action of

*Starr v. Jackson.* There is a very recent illustration of the law advanced by Lord *Coke* in relation to landlord and tenant. He says that trespass *vi et armis* will lie. But by the practice of the courts in England it is an action of trespass on the case. *The Provost of Queen's College v. Hallet,* 14 *East.* 490.—If then the language of the law be the same in relation to a stranger, as to a tenant at will, it is difficult to conceive how the practice can be different.

But the case cited from *Rolle* in *Starr v. Jackson* is easily reconciled with a different conclusion from that which is drawn from it. The lessee at will may have one trespass and the lessor another trespass ; that is to say, one may have one kind of trespass, and the other another kind. That this is the meaning may be fairly deduced from a precedent in *Fitzherbert* and his comment upon it. 200. *E.* " There is another form of this writ " (trespass) thus, wherefore with arms &c. he filled a certain " ditch in *L.* with earth and mud, that the water issuing from " the ditch aforesaid overflowed the corn of him the said W. " being in sheaves in his barn there, by which his corn aforesaid " to the value of one hundred shillings, was putrified ; and " plucked up by the roots his trees there lately growing to the " value of forty shillings, and with certain beasts fed, trod down " and consumed his corn there lately growing, to the value of " forty shillings," &c.

On this he observes, that " by the first of these writs" (that is, by the first part of this kind of writs) " appeareth that *that* is " an action of *trespass of the case,* and the residue a *common action* " *of trespass.*" When the law in *Rolle* is taken in the sense now contended for, it is consistent with established practice ; in the sense contended for by the plaintiff, if it should prevail, the practice would be subverted. Indeed the case of *Starr v. Jackson* professes to overrule the opinions of English Judges and compilers, and the decisions of the Supreme Court of *New-York,* on the authority of the common law. But it has been seen, from the authorities cited in the present case, that the term " trespass" was for ages a broad expression, almost sinonimous with " tort," in its general acceptation ; it is therefore inadmissible in this character of antiquity, notwithstanding its adoption in the case of *Starr v. Jackson.*

It has been further argued for the plaintiff that a mere tenancy at will is not a dispossession of the owner : or rather *that the possession of the tenant is the possession of the owner*, and it is so said in *Comyn* ; but this language is metaphorical, and is not true in fact.   The possession of tenant at will is his own possession *only* as between him and his landlord, or a trespasser.   He has a right to hold from year to year unless a shorter time be agreed on ; his tenancy is not to be terminated abruptly ;  he must have precise notice and sufficient time to quit the premises, and the owner has not even the right of possession, or of an action for possession, but upon these conditions.   1.  *D. & E.* 159  *Flower v. Darby.*  8.  *D. & E.* 3.  *Clayton v. Blakey.*  1.  *Hen. Bl.* 311. *Ward v. Willingale.*, 2 *Bl. Com.* 146, 47 and *Christian's* notes. These are the general principles in relation to tenants at will ; but to these there may be exceptions, in which the maxim in *Comyn* might apply, as in the case of *Warren v. Fearnside* 1. *Wils.* 176, where justice and policy required that the possession of the tenant should have no other effect than the possession of the owner, in order that the estate might be protected from forfeiture to the crown, for treason in the tenant.   But the facts in the case at bar offer no exception in favor of the plaintiff.   No possession in him is deducible from them ; neither justice or policy requires the aid of fiction to decide that the possession of his tenant was his own possession, in opposition, or as an exception to general principles.   On the contrary it appears that the tenancy was in fact from year to year at a stipulated rent ;  it appears also that the injury done was to the possession only and not to the estate.   It can therefore in no legal sense be said that the *locus in quo* was the close of the plaintiff at the time of the trespass, or that he ought to recover damages in any form of action.

But a maxim in law opposed by a current of authorities, on questions similar to the present from the nature and object of the cases, ought to be taken as an exception to the general rule ; and in this way the dictum in *Comyn*, and the case of *Warren vs. Fearnside* may be reconciled with the rights of tenants at will as defined in  *Flower v. Darby* and similar cases, and with the rights of owners as defined by the authorities before referred to on this

subject. The protection of an estate from forfeiture, or any similar object, and the recovery of damages against a wrong doer, are so different in their natures, that they may well admit the application of different maxims in practice, without affording a reason for imputing inconsistency to the law.

There is nothing in the case of *Danforth v. Sargent & al.* that controverts the authorities cited for the defendant. In that case the lease was for one year ; there was notice to the tenant to quit the premises, and it is to be presumed it was legal notice. Neither is the statute declaring tenants by parol to be tenants at will availing to the plaintiff ; for it furnishes no definition of the rights of tenant at will ; they are therefore to be deduced from the common law. Besides, it would not seem to be a reasonable construction of the statute to say that it places the tenants in the same condition as a mortgagor or his tenant in possession, and renders him liable to an action without notice, as in the case of *Warne v. Hall & al. Doug.* 21. which furnishes another exception to the general rule of law.

Now the decision in *Starr v. Jackson* goes on the general ground that a tenancy at will may be terminated at any moment ; from which it would follow, if this doctrine is to be received in its full extent, that a tenant who sows with the consent of the owner, and occupies at an annual rent, would be a trespasser, if he should reap against the will of the owner. Where then would be the remedy of the tenant ? He is left to a suit at law for the non-performance of a promise which the owner was under no obligation specifically to perform. But it is respectfully submitted, that this ought not to be received as a principle binding on this Court : and if in the views of the common law which have been suggested on the present occasion, there has been no misconception of its import, the decisions of the Supreme Court of *New-York* are to be respected as well founded authorities. 1 *Johns.* 511. 3 *Johns.* 468.

*Longfellow*, in reply, said he did not expect the authority of the case of *Starr v. Jackson* to be questioned ; and the view he had taken of the present case rendered it unnecessary to reply to the arguments to this point from the other side.

By our *Stat.* 1821, *ch.* 53, all uncertain tenures, not created by writing, are reduced to estates *at will* only ;—and thus the doctrine raised as to tenancies from year to year is destroyed by statute. Whatever right to *notice* tenant at will may have in *England*, is founded wholly on statute provisions which have never been adopted here. In this State, his rights stand upon the common law, which leaves him entirely at the mercy of the landlord. The cases to this point cited by the other side are therefore inapplicable.

The right of the tenant to remove fixtures by him erected, though recognized in *England* in some cases, is rigidly restricted to erections made for the purposes of *trade*. *Elwes v. Maw* 3. *East* 54. In this case it was expressly refused to a tenant for purposes of *agriculture*. The same right was denied in this Court, in the case of a mortgagor who had removed buildings erected by him after the execution of the mortgage. *Smith v. Goodwin* 2. *Greenl.* 173. *McKenney*, therefore, being but tenant at will, had no permanent interest in the fences, and could have no remedy for their value, when taken away.

Wherever trespass *vi et armis* lies, *case* also lies ;—and so an action of the case might well have been sustained, in the instances cited by *Mr. Orr*. Hence the existence of such precedents in the books proves nothing. It only shews that this form of remedy may generally have been preferred,—but not that *trespass* would not have been equally good.

After this argument, which was had at *May* term 1823, the cause was continued for advisement, and now the opinion of the Court was delivered as follows, by

MELLEN C. J. Notwithstanding the wide range which the counsel have taken in this cause, and the elaborate investigation which it has undergone, we are satisfied from a more particular examination of the plaintiff's declaration, and the facts on which the Judge's instructions to the jury, were founded, that the question reserved for our decision is narrower and more simple, than has been imagined, and capable of an easy solution.

The allegation in the writ is, that the defendant, with force and arms, broke and entered the plaintiff's .close, and carried

Little *v.* Palister.

away fifty cords of wood,—broke down the plaintiff's fence, subverted and broke down the plaintiff's grass,—tore in pieces the buildings, and expelled from the dwelling house one *Hannaford*, a tenant of the plaintiff.

By the report it appears that no part of the alleged trespass was proved, except the breaking and entering the close, or in other words going into it, and tearing or throwing down some parts of the fence on the land, which had been built by *McKenney*, during the tenancy at will, by his own labour, at his own expense, and for his own use. There was no proof that he had destroyed, or carried away, or appropriated, any part of it. The Judge instructed the jury, that on those facts the action was not maintainable. The counsel for the plaintiff, in support of his motion for a new trial, has relied on the decision in the case of *Starr &· al. v. Jackson* 11 *Mass.* 519, as establishing the principle that an action of trespass *quare clausum fregit* lies for the owner of land in the possession of his tenant at will, where the injury affects the permanent value of the property ; and that that decision is applicable to the case before us. The counsel for the defendant denies that the tenancy of *McKenney* was a tenancy at will, and contends that it was a tenancy from year to year, and so not within the principle of *Starr &· al. v. Jackson* ; and insists further that that case ought not to be received and respected by this Court as an authority.

With respect to the tenancy, we are of opinion it must be considered as a tenancy at will. By the express terms of our statute, and that of *Massachusetts*, of which ours is a transcript, all parol leases are leases at will only. This same question has also been decided in *Massachusetts*. With respect to the case of *Starr &· al. v. Jackson*, we apprehend that the facts before us do not require that we should call in question the correctness of the principle laid down by the Court in that case ; nor is it necessary for us to intimate any opinion in relation to the principal point of the decision. The present case is different from that as it regards the nature of the trespass committed, and we may safely rely on some of the undoubted principles of that case to shew that we ought to arrive at a different conclusion in the decision of this. The question there was whether the action should not

have been *case* and not *trespass*, as the wrong committed was injurious to the permanent estate, such as destroying a building, ploughing and subverting the soil, &c. during the possession of the tenant at will. The Chief Justice, in pronouncing the opinion of the Court, says "There seems to be no doubt but that a tenant " at will, and his landlord, may both maintain actions for injuries " done to the soil, or to buildings upon it. They are both injured ; " but in different degrees ;—the tenant in the interruption to his " estate, and the diminution of his profits ;—and the landlord in the " more permanent injury to his property. If a house, occupied " by a tenant at will, or for years, should be demolished ; or if " the fruit or forest trees of a farm so occupied should be cut " down, it is obvious that the tenant ought not to recover in dam- " ages the value of the thing destroyed ; and it is equally obvious " that the landlord would be entitled upon common principles of " justice to recover indemnification for the injury done to his " freehold. And there would be no difficulty in separating the " damages, by the verdict of a jury, according to the respective " interests of the several parties." By keeping the above dis- tinction in view, and the facts proved against the defendant, it will be seen that the wrong he committed was not a violation of any of the rights of the plaintiff, or injury to his freehold, but of the rights of the tenant at will ; and was an injury to *him*, impair- ing his *profits*, &c.—an injury for which *he only* has a right to demand damages,—not the plaintiff. His want of actual posses- sion need not then be resorted to as a ground of defence. Hence we see the case of *Starr & al. v. Jackson* does not apply to the point for which it was cited. *McKenney*, a tenant at will, had a right to erect such fences, and in such places on the land, as suited his convenience ; and of course he had a right to *take them down*, and *remove* them from one place to another on the land, according to his own pleasure, and without consulting his landlord. It does not appear, as we have before stated, that the defendant *destroyed* or carried away or in any manner *appropriated* the fence to his own use. What he did was an injury to *McKenney* the lessee, for which he might recover damages ; but it was no kind of prejudice to the plaintiff. It was the *lessee's* fence which was thrown down. This wrong might and did injure his rights, and

impair his profits, by exposing his fields ; but why should the plaintiff complain, or have reason to, any more than if the lessee himself had thrown down the fences ; which he certainly might have lawfully done as often as his judgment or caprice should dictate ? The *nominal, technical* trespass, committed by entering the close, was no injury to the plaintiff ; the soil was not subverted or damaged ; and though the grass might have been trodden down, and injured, this grass was the *property*, and part of the *profits*, of the lessee ; he only was injured ; he only can claim damages for this *particle* of wrong. It is not necessary to decide the cause therefore on the broad ground on which it was placed by the arguments of the counsel ; nor whether a tenant for years or at will has a right to take down, carry away, or dispose of, at the end of his term, any fences which he may have erected on the premises during the continuance of his lease. As the facts do not require a decision of either of these questions we give no opinion respecting them. For the reasons above assigned we are of opinion that the motion for a new trial must be over-ruled.

*Judgment on the Verdict.*