"Know all men by these presents, that we, Richard Jones and Frances Ann Jones, his wife, are held and firmly bound unto John C. Stanly in the just and full sum of four thousand three hundred and four dollars ($4,304) current money of the State aforesaid, to the payment whereof well and truly to be made to the said John C. Stanly, his executors, administrators, and assigns, we bind ourselves and our respective heirs, executors, *Page 288 
and administrators, jointly and severally, firmly by these presents, sealed with our seals, and dated this 14 January, 1815.
"The condition of the above obligation is such that whereas the said Richard B. Jones and Frances Ann Jones, his wife, by certain letters of attorney, under their hands and seals, have made and appointed William Blackledge, Esq., and Hugh Jones their agents and attorneys to sell and dispose of two certain tracts or parcels of land lying in Craven County, and on Neuse Road, near the town of New Bern, the one patented by Nicholas Rutledge in 1744, for 400 acres, the other by Jeremiah Vail, in 1755, for 150 acres, more or less, in obedience to which letters of attorney the said William and Hugh have bargained and sold said tracts or parcels of land to the said John C. Stanly in fee simple at and for the price of two thousand and one hundred and fifty dollars, which said consideration the said purchaser has paid or secured to be paid: Now, therefore, if the said Richard B. Jones and Frances Ann, his wife, shall execute, seal, and deliver unto the said John C. Stanly, his heirs or assigns, a good and sufficient deed and assurance to convey and assure said two tracts of land to the said John C. Stanly, his heirs and assigns, in fee simple absolute, in such manner and form as the acts of the General Assembly of the State of North Carolina require for the conveying and assuring of lands offeme coverts or married women, and shall also cause the private examination of said Frances Ann Jones as to the execution of said deed or assurance to be had, obtained, and recorded (435) in the manner required by the laws of North Carolina for the sale and conveyance of the real estate of married women, then the above obligation to be null and void; otherwise, to remain in full force, virtue, and effect."
The locus in quo was included within the boundaries of one of the patents mentioned in the condition of the bond. Directly after its execution Stanly, with the consent of Jones and Blackledge, entered into the premises and took actual possession of the cleared land, which included a part of both patents, and continued the entire and exclusive possession of it, cultivating it and claiming and using the timber on every part of the land within the boundaries of the patents, although not within his inclosure.
The trespass complained of was committed after the sale to Stanly, and before he had received a conveyance, viz., in January, 1818, when the defendant, claiming title adverse to that of the plaintiffs, entered upon the land and cut and used several timber trees growing thereon, but on the outer side of the fences *Page 289 
and inclosures of Stanly. Since the first entry of Stanly the plaintiffs have had no possession of the land, unless the possession of Stanly is in law their possession, or unless they have a possession constructively by reason of their legal title.
Upon these facts his Honor, Judge Ruffin, held the possession of thelocus in quo to be in Stanly, and that the plaintiffs had not a possession sufficient to enable them to sustain this action. In submission to this opinion the plaintiffs suffered a nonsuit and appealed.
I shall confine myself to a short (437) discussion of the principles to be extracted from the authorities which have been cited. There cannot be a possession of lands without some estate in them. If one enter on my lands and oust me, he thereby gains an estate in them and puts an end to mine; for if he acquire it, I must lose it. It cannot exist in us both adversely at the same time. I may put an end to the adverse estate by action or entry, but it continues until an end is put to it. For trespasses, whilst in this state, the disseizor may bring his action; but I cannot, for I have no estate in the land; I have nothing but a right, not to the land, to speak properly, but to an estate in the land. If one enter by my permission, and I grant him no estate in the land, by which is meant an interest recognized in the law, he may be my bailiff, my agent, my receiver, or my guest; but he is not my tenant. He does not divest me of my possession; he may hold the possession for me, but he does not hold it against me. That no estate — that is, interest in the land — is created by this permission to enter is evident from the fact that there is no writ in the register prescribed for it, in case it should be divested, whereby it may be restored. We find in the register a variety of writs for the owners of estates, by which they may be restored to them, but none for such a claimant as John C. Stanly. There are the various writs for the tenant in fee, in tail, and for life; and since the time of Edward IV. and Henry VII. we have used the ejectment as a remedy for the termor, not only to recover damages, but the term itself. On this subject more shall be said hereafter. It is absurd for the law to recognize an estate, or an interest in land, and yet not provide a mode for the recovery of that estate or interest, should it be lost. If Stanly's interest is an estate, give it a name. Is it a fee simple? An answer in the negative is at once given, and perhaps *Page 290 
(438) with some petulance. But it has more of the character of a fee simple than of any other estate. The former owners, Jones and wife, consented that Stanly should be owner in fee, and unless upon the principle that the major includes the minor, it has not a single property of any other estate known in the law. To an estate at will, to which it is attempted to be reduced, it bears not the least resemblance; for if we take either the agreement itself or the understanding of it by the parties as our guide, we shall find that it was to continue forever, instead of being determinable at the will of the parties; it was never designed that either of them should put an end to it at his pleasure. The same objections may be made to it as an estate from year to year. If it is a tenancy, what services are due? The reply made is that none were reserved; but if it is a tenancy, fealty is due of common right. I use the words tenant and tenancy in their modern acceptation, not in their feudal meaning. We may perplex ourselves in vain to find out a legal term to designate this interest, for it has in law no existence. It is unknown to the law; it is an equitable fee simple, and were it not for the notice of it in the courts of equity we should not, in the courts of law, be so perplexed with it. We should call it at law what it really is, a license to enter, which protects the person to whom it is given from an action for entering and occupying until the license is withdrawn. And although there is much said in the books on the subject, it amounts to only this: it protects the person both from an action of trespass quare clausum fregit, and the action of ejectment; and this upon common-law principles. I suppose it is upon principles of policy for the encouragement of agriculture that such license cannot be withdrawn but upon reasonable notice, say six months, and that the occupier should have the emblements. This rule, however, does not affect the rights of the owners as to strangers. Astute as we may be to make the interest of Stanly something like an estate, something like a possession, to protect the person who thus enters under a (439) license from the actions of the owner, we have no such motive as regards strangers — mere wrongdoers. If we are governed by principles of property, it is much more proper that the owner should bring the action than one who enters under a treaty for a purchase. From the contract, if it should be fulfilled, the owner is trustee for the purchaser. He therefore recovers for the whole injury. There can be no doubt upon the question whether the damages are not awarded to the wrong person. But the purchaser's claim to the damages is *Page 291 
provisional; the purchase may not be completed, and in such cases the wrong person may pocket the recovery. This uncertainty would perplex the jury, and they would necessarily be influenced by the probability of the purchase being completed or not.
I have read, with great satisfaction, the very able opinion of ChiefJustice Parker in the case of Starr v. Jackson, 11 Mass. 519, and it is no objection that his argument would lead to the same result if there was a lease for years as it stood before the time of Edward IV. For until that time a termor had no estate, and consequently no possession in the lands — I mean such a possession as ousted that of the owner. As to the world, the landlord had the ownership and possession. As between termor and landlord, their relationship existed in contract — in agreement; nothing passed in the land. It is true, the termor had his action of ejectment for his ouster, but before that time I believe he could not sustain trespass quare clausum fregit. But should I be mistaken in this, it weakens the argument but slightly; if not, it is conclusive.
Upon no principle can a mere tenant at will interfere with the lord's right of sustaining the action for a permanent injury to the freehold. This reasoning by no means goes to deprive such an occupier from maintaining trespass against a wrongdoer, for ousting him from the possession, or from recovering for a trespass on things more immediately in his possession; as for entering the house or inclosure, or treading (440) down his corn or grass, or pulling down trees necessary for shelter, shade, fuel, or repairs; and the right would also extend to a tenant at sufferance. But this is beside the owner's right to the action; it does not affect that. I repeat it again, that it is the countenance which a court of equity gives to such purchasers which perplexes us. Strip it of that, and it presents the simple case of one who enters on lands by the license of the owner, which certainly protects him for all acts done under that authority; but, like all licenses, it is revocable, and does not interfere with the possession of the owner.
We read of the plea of liberum tenementum for the landlord, but of none analogous to it for the termor. He defends his entry and possession under the estate of his landlord by showing a license or permission from him. Had he an estate recognized in the ancient law it would have prescribed to him a plea founded upon it. But we find that it gave him neither an action to recover his estate or interest nor a plea under which he might assert it. And it would be strange if the freeholder should lose his rights in the estate without another person's acquiring them. I speak of the law as it stood before the time *Page 292 
of Edward IV., when the owner of an estate and the freeholder were synonymous terms. That an estate in the land is necessary to support trespass quare clausum fregit, see the following cases: Hoe v. Taylor, Croke Eliz., 413, also Wilder v. Bridgewater, ib., 421.