Parker, C. J.,
delivered the opinion of the Court.
This case is predicated upon the supposition, that the owner ol a mill privilege, which is destroyed or impaired in value by the building of a dam on another privilege, above or below on the same stream, is entitled to damages in proportion to the injury sustained. And the principle does not seem to be denied, where the injury, by drawing off, stopping or flowing back the water, obstructs the operation of a mill already existing. But it is supposed by the counsel for the defendants, that where the privilege is unoccupied by a mill, the principle cannot be applied (11).
If the privilege in question had never been occupied, the argument would be well founded; for the owner of a mill site, who first occupies it by erecting a dam and [ * 297 ] mill, * will have a right to water sufficient to work his wheels, if his privilege will afford it, notwithstanding he may, by his occupation, render useless the privilege of any one above or below him upon the same stream. So, if a site once occupied had been abandoned by the owner, evidently with an intent to leave it unoccupied, it would be unreasonable that others, owning above or below, should be prevented from making a profita ble use of their sites, from fear of being exposed to an action for damages by their neighbor. Questions of this kind, however, are proper for the consideration of a jury; and unless they find that a privilege, which has been obstructed, has been abandoned, the owner of such privilege will be entitled to recover suitable damages.
*239 In the case before us no such fact is found. The plaintiff’s mill had become ruinous before she acquired a title to it, and very soon after the conveyance to her, according to the evidence: to have rebuilt it would have been fruitless, because the dam was then erected below. Besides, she only held it as security for a debt, before the year 1817, and could have no interest in making expenditures upon it. As soon as she entered to foreclose, she had a right to the full use and value of the privilege, as it was when her title commenced. To say that she cannot be indemnified for the diminished value of the mill, because no mill is actually standing the use of which may be interrupted, would be to oblige her to incur all the expense of building, at the hazard of consequences, and it may be, of the whole value of the buildings, as well as of the privilege.
But another objection to the verdict is, that by the release made by the plaintiff to Edwards of a small piece of land on the west side of the stream adjoining the dam built on the privilege owned by the defendants, a right to stop the water passed to the grantee; or that the plaintiff is estopped to claim any right to the stream in front of the land released; so that she is barred of her right to claim damages for any injury to the upper privilege, which * might happen in consequence of the making or con- [ * 298 1 tinuing of the dam below.
If such were the intent of the parties to that instrument, apparent from the deed, it would certainly put an end to the plaintiff’s claim. But we think the deed not capable of such a construction. The land released is limited to the bank of the stream, which necessarily excludes the stream itself; and there are no general words by which a right to keep up a dam there, can be said to be conveyed. It does not appear by any expressions in the deed, that either of the parties to it had any view to the use of a stream as a mill privilege; and it is not to be inferred, without very strong grounds for the inference, that the plaintiff, for a nominal consideration, had surrendered every thing valuable in the property, for which she had given a large and adequate consideration. If sucb had been the legal effect of her deed of release, her sex, and probable incapacity of business, would afford room for suspicion that an unfair advantage had been taken of her ignorance, by one who better knew the force and effect of language in instruments of conveyance. But no such unfairness can Be imputed in the present case.
The purpose for which the release was obtained, does not appeal in such manner that we can take notice of it. But there is no more reason to suppose it was wanted for the purpose of enabling the releasee to keep up the dam free from any claim of damages, *240 than that the land was intended to be used for some other purpose wholly unconnected with the dam. Indeed the operation of the release, under the actual circumstances, is no more than if the land described in it had been excepted from the mortgage; in which case t would not be pretended, that the mortgagee intended to waive my rights she might have in the property conveyed by the deed. Without doubt, by our law, the owner of land extending [ * 299 ] to the bank of a river will own to the middle of the * river, if it be not navigable, and so public property. But the owner may sell the land, without the privilege of the stream; as he will, if he bounds his grant by the bank. This principle is well explained in the case of Storer vs. Freeman, cited in the argument. The description of the land granted in the release to Edwards very clearly excludes any part of the stream ; and, as before observed, there are no general words of a more extensive signification.
As to the damages, we think it was right to limit the plaintiff to the period of her actual possession. Before that, it was uncertain whether she would claim to hold the land and other privileges, or rely upon her personal security for her debt. Although a mortgagee may enter at any time, yet, until he enters, the land must be considered as belonging to the mortgagor; who can maintain trespass for any injury to the freehold, against any but the mortgagee. There is no doubt that Edwards could have maintained this action, unless barred by some act of his, other than his mortgage to the plaintiff. The rule adopted by the jury was a reasonable one. Having ascertained the value of the privilege, if unobstructed, they gave the interest of that sum, from the time when the plaintiff’s right of action accrued.

Judgment on the verdict

 [In Bigelow vs. Newell, 10 Pick. 348, it was held that where the proprietor of land, through which a stream of water flows, has built or is building a mill thereon, a proprietor of land below cannot, without a right, by grant or prescription, or actual use, erect a new dam, or raise an old one, so as to destroy the upper mill privilege, simply under a liability to pay damage, pursuant to the statute, u hich does not apply to such a case. See Revised Statutes, c. 116, § 2.—Ed.]