The opinion was delivered at the September term, 1851.
Shaw, C. J.
This is a process commenced originally before a justice of the peace, under the Rev. Sts. c. 104, usually denominated the statute of forcible entry and detainer; although it provides a summary process by complaint for restoration of possession, in the case of landlord and tenant, as well as in *565 that of forcible entry and detainer. This chapter, in the first and second sections, makes provision for the like summary process, by complaint, in the two classes of cases, which were formerly provided for in different statutes; and which, in the first draft of the commissioners for revising the statutes, were embraced in different sections and provisions, but ultimately brought together in these two sections. See the Commissioners’ Report, note, c. 104, § 20. This connection of two different subjects may have led to some confusion and misapprehension ; but when carefully considered, we think they will be readily understood.
As there seems to be some misunderstanding in the community, in regard to the relative rights of landlord and tenant, especially in cases of tenancies at will, the manner in which a tenancy at will may be determined, the effects of such determination, and especially the cases in which the summary process provided for by the Rev. Sts. c. 104 will lie; and as several cases involving these questions have been recently before us, and others are pending upon this circuit, we have thought it necessary, before proceeding to consider the present case and the principles applicable to it, to take a somewhat general view of the legislation upon these several subjects, and of the construction which has heretofore been put upon the various provisions of the statute in question, in judicial proceedings.
The first statute provision, which was intended to give a remedy to landlords, to enable them to obtain possession of tenements, against tenants holding over, by a summary process before a justice of the peace, was the statute of 1825,-c. 89. The mischief manifestly was, that tenants, after their right to hold had terminated, or after ceasing to pay rent, could only be removed, and landlords restored to possession, by a final judgment in a real action ; and such defaulting tenant might keep the rightful owner out, without paying rent, so long as legal process could be kept on foot. The leading provision in the statute, to meet and remedy this mischief, was, that a landlord might have a summary process by complaint before a justice of the peace, to be proceeded upon at short notice ■ *566 and although the defendant was secured in the right of appeal yet if he took an appeal, it was upon condition of giving security, not only to pay the costs, but the intervening rent and damages, from the time of the appeal to the final judgment, in case the landlord should finally recover. The effect would be, that the landlord, if really entitled to the possession, would obtain possession speedily, under the justice’s judgment and warrant, or would have security for the rent as an equivalent.
This act, which in the title was called an act providing further remedies for landlords and tenants, went further, and, in the enacting part, was not limited to that object. It provided, that when any tenant or occupant of any house or tenement shall hold such tenement without right, whoever has the right of possession may summon such tenant or occupant, and proceed against him for the recovery of the possession, before a justice of the peace, in the manner provided in the act. Possibly, the person who drew this act intended to use the term tenant as designating one holding under a lease or demise of some sort; but this is not the legal meaning of the term, which extends to all persons holding real estate. Such was the construction put upon the act, in the case of Sacket v. Wheaton, 17 Pick. 103.
The commissioners, in preparing the revised statutes, obviously intended to guard against an extension of this summary process to all cases of persons holding possession without right, and to limit it to its probable original purpose. The provisions reported by them, therefore, were ( § 20) that when any lessee of lands or tenements, or any person holding under such lessee, should hold possession of the demised premises without right, after the determination of the lease, and after notice to quit, he might be removed from the premises in the manner therein provided ; and (§ 21) that the landlord, or person entitled to the possession, might take out from any justice of the peace, a writ in the form used for an original summons in common civil actions before a justice of the peace, in which the defendant should be summoned to answer to the com plaint of the plaintiff, for that the defendant was in the possession of the lands or tenements in question, describing them, *567 which he held of the plaintiff for a term that was past, and which he continued to hold unlawfully, and against the right of the plaintiff, as it was said.
The reported provisions were not adopted in form by the legislature; but the cases of forcible entry and detainer, and of a lessee holding over after a demise, which the commissioners in their notes (see note, c. 104, § 26,) considered nearly analogous, were brought together and provided for in one and * he same section; c. 104, § 2. The precise form of that enactment is as follows: “ And also, When the lessee of any lands or tenements, or any person holding under such lessee, shall hold possession of the demised premises, without right, after the determination of the lease, either by its own limitation or by a notice to quit, as provided in the sixtieth chapter, the person entitled to the premises may be restored to the possession thereof, in the manner hereinafter provided.”
This is the provision, upon which the questions above alluded to depend. Instead of reaching every wrongdoer, or person holding possession of the land without right, it is plainly limited to a lessee, or one who has been a lessee, and who ought to surrender the possession of the premises to the person who is lawfully entitled to the present possession. The statute therefore gives this summary process against one who is or has been a lessee, or claims under a lessee, in favor of the lessor, or of any one then entitled to the immediate possession. This seems to extend to every species of lease or demise, whether for life, (the lessee’s own, or pur outer vie,) for years, or at will, by lease or by paroi; and to every species of lessee, assignee, or sub-tenant; and to every lessor, assignee of the lessor, or reversioner, whether by act of law, or assignment in pais. And if by the determination of the term, the reversion has merged in the fee, then the remedy is given to the owner in fee; who seems to be embraced in the description, “ the person entitled to the premises,” that is, the possession of the premises, after the determination of the lease.
This seems to be the construction put upon the clause in the Rev. Sts. by the commissioners who reported it. In theii note to $ 20 of the report, they allude to the statute of 1825 *568 c. 89, and remark, that its title and general tenor show, that it was intended to apply merely to the case of landlord and tenant, and therefore they limit their enactment to that object. They remark, further, that if the party in possession has acquired that possession by force, or should detain it by force, he might be removed by the process of forcible entry and detainer ; if in any other mode, the action of trespass or writ of entry would be a sufficient remedy ; and that if this summary process of the statute of 1825 was extended to the case of every “ tenant or occupant ” of land, who should refuse to quit it, upon the demand of any adverse claimant, it might supersede the writs of trespass and entry, and bring every disputed title to be tried by this summary process.
The commissioners seem to have overlooked the provisions in the statute of 1825, and also in their own report, that if in this process the title is drawn in question, the case should be transferred to the court of common pleas. However, it is very manifest, that this summary remedy, for restoration of possession, was intended by the commissioners to be confined, and was confined, to a case, where the possession was obtained in consequence of the relation of tenant, which, at some time, had been held by the defendant, or by the person under whom he claimed. This part of the act is now limited to the case of a tenant holding over.
The statute, as reported by the commissioners, had one set of sections for the case of “ forcible entry,” and another set for the case of landlord and tenant. Accordingly, in § 21, of the commissioners’ report, the form of complaint was prescribed, as already stated, and it was declared, that no other declaration should be required. This is the form, which the commissioners, in their note to § 21, say, would be applicable to all cases of tenancy, and in which the allegation would be equally true and appropriate, whether the suit was between the original lessor and lessee, or their representatives. They also remark, that it would be a sufficient mode of stating the 'termination of the lease, whether it was for life or years, and in whatever mode it might have been determined.
In this chapter, the legislature did not adopt the report of *569 the commissioners, in form, but altered the whole structure of the statute, probably, for the purpose of making the same pro* visions in fewer terms. For this purpose, they put the cases of forcible entry and detainer, and the holding over of a tenant, into one section ; and in the subsequent clauses, describing the mode of proceeding, they prescribe one and the same mode for all the cases. Accordingly, in § 4, substituted for § 21, of the commissioners’ report, it is directed, that the complaint shall state, “ that the defendant is in possession of the lands and tenements (described) which he holds unlawfully, and against the right of the plaintiff, as it is said; ” and that no other declaration shall be required.
It might seem, at first sight, that the legislature, by this form of complaint, intended to restore the broader operation of the statute of 1825, so as to include all cases of holding possession of land without right. But it may readily be seen, why these terms of the complaint were altered, and made more general, without involving any such intent. The commissioners, in their report, had made different provisions for the different cases. They directed, in cases of forcible entry and detainer, that the complaint should state, with convenient certainty, the entry or detainer, complained of, to two justices, who were to summon a jury, and take an inquisition, whether the complaint laid before them was true, according to their evidence. §§ 5 and 6. All this was changed by the legislature, who directed, proceedings, before one justice, to be tried by him, in the manner already stated; and in pursuance of this design, directed one complaint, general enough in its terms, to extend to all the three cases, namely, forcible entry, forcible detainer, and the holding over of a tenant unlawfully; and with that purpose, described the form of complaint in § 4 of the statute as passed in the Rev. Sts. c. 104. This change is to be regretted, because the complaint, as made, and the warrant containing it, as served, will give the defendant no notice whether he is sued for a forcible entry, forcible detainer, or for an unlawful holding over after the termination of a lease. Perhaps this will practically be attended with little inconvenience, because by the statute, the case to be proved must be limi+ed to one of these three, and *570 the defendant, in general, will not be at a loss to understand which.*
From this view, it seems to be very clear, that the cases intended to be reached by this summary process cannot extend to any unlawful holding of possession, other than those embraced in some one of the three forms above mentioned.
What constitutes a tenancy at will, what are its incidents, and what are the rights of the parties, was first considered fully in the case of Rising v. Stannard, 17 Mass. 288. In Ellis v. Paige, 1 Pick. 43, it was decided, not by a unanimous opinion, that a tenant at will, in this commonwealth, was tenant at the will of both parties; and that the lessor might determine his will, and put an end to the tenancy, and that without notice to quit. But it was further held, that after such determination by the lessor, the lessee had a reasonable time to remove, which reasonable time was a question of law. In this case, Putnam, J., gave a dissenting opinion, which is reported in a note to the case of Coffin v. Lunt, 2 Pick. 71; in which last-mentioned case, Parker, C. J., spoke of the question as still open and unsettled, whether notice to quit was necessary to determine a tenancy at will. In the same case, it was held, that, if notice was necessary, the length of time must be regulated by the terms of the paroi agreement by which it was formed; and where rent was payable monthly, a month’s notice was sufficient. Such was the state of the law, it is believed, when the St. 1825, c. 89, passed February 15,1826, was enacted. The fourth section provided, that from and after the 1st of July, 1826, all leases at will, and tenancies at sufferance, of any lands or tenements, might be terminated by either party, after giving to the other party three months’ notice; and when the rent was due and payable more frequently than quarterly, the notice was sufficient if equal to the interval between the times of such payments; with a proviso, that, in case of refusal *571 or neglect to pay the rent due, fourteen days’ notice should be sufficient; and also, that nothing in the act should prevent landlords from pursuing their rights and remedies by the common and statute law, as then existing in this commonwealth.
These provisions are substantially reenacted by the Rev Sts. c. 60, § 26, omitting, however, tenancies at sufferance, aim the last proviso, saving to landlords all other remedies. The omission of tenancies at sufferance is founded in obvious reason. If one in possession of land is a mere tenant at sufferance, he is bound to go out without notice, on the entry of the landlord; if the landlord permits him to remain, and especially if he receives rent of him, then he becomes tenant at will, and his rights and liabilities are regulated accordingly, by the other provision of the statute.
The broad, saving clause, contained in the act of 1825, if construed literally, would seem to render the act itself almost nugatory. The act provided, that either lessor or lessee might terminate the tenancy by giving three months’ notice. If this provision was merely permissive, and all other rights and remedies were saved to landlords, then the statute merely added one more to the existing modes, in which such a tenancy at will might be determined; so that if the landlord could terminate the tenancy by entry, without notice to quit, before the statute, he might do so afterwards; and the statute thus added nothing to the security of the interest of a tenant at will. We are not aware, that any case occurred to test this question between the passing of the statute of 1825, and the enactment of the revised statutes in 1836. In framing the latter, this large saving clause was omitted.
The question then is, what construction is to be put upon the provision of the Rev. Sts. c. 60, § 26, relative to the determination of estates at will. Is it equivalent to a provision, with negative words, that thenceforth a tenancy at will shall not be determined, as between the parties, without the notices provided for in that chapter ?
In order to understand and apply the true meaning and construction of this provision, it is necessary to consider what the law was before; what was the mischief or inconvenience to *572 be avoided or corrected; and then the words adopted with a view to reach that object.
The law governing tenancies at will was well understood, and had an old and deep foundation, in the common law. A tenancy at will was held to be at the will of both parties; it was personal to the parties creating it; and if heirs or assigns were mentioned in the agreement, the provision relating to them was void and had no effect. But such a holding, according to its literal sense, was extremely precarious and inconvenient; and, in England, courts readily laid hold of slight circumstances of agreement, usage, and presumed mutual convenience, to convert tenancies at will into holdings from year to year; and then followed the requisites of notice to quit, expiring at the end of a year, and other incidents. Strict tenancies at will, however, at common law, still subsisted; and there were well-known modes, by which such tenancies were terminated by operation of law; amongst which were the death of either party, alienation, waste by the tenant, &e.
But the question is, what was the state of the law in this commonwealth, when the act of 1825 was passed. To say the least, it must be considered extremely doubtful. It had been decided in 1822, in the case of Ellis v. Paige, 1 Pick. 43, that as between landlord and tenant at will, notice to quit was not necessary; but that reasonable time should be allowed to the tenant, after the entry of the landlord or demand of possession by him, to enable the tenant to remove his property. But in this opinion, as already remarked, the court were not unanimous ; one learned judge, Putnam, J., came to a different result upon the point in question, and drew up an elaborate opinion, (see 2 Pick. 71,) which, by mistake, was not delivered at the time the case was decided, in which he maintained, that notice to quit was necessary, according to the English authorities, and stated that the law had been so uniformly considered in Massachusetts. It is stated by the reporter, (in a note, 2 Pick. 71,) that another learned judge, Jackson, J., concurred with Putnam, J., in the opinion thus expressed.
Such was the state of the law, on the adjudicated cases, *573 when the statute of 1825 and the revised statutes were respectively passed. It seems to us, that the object was, not to show how this precarious relation of tenancy at will should be determined by act of law, but what should be done by either party to determine his will, and purposely to put an end to the tenancy, in pursuance of that determination. There was much nicety on this point in many of the old authorities; and some attempts to determine the holding of a tenant at will were held to be void, because they were fraudulent determinations of the will. The object of the legislature seems to have been, to provide an easy, peaceable, and equitable mode of determining this anomalous and precarious estate, and to enable the landlord, or other person entitled to the possession, to regain that possession in a reasonably short time, and for that purpose to have the aid of the magistrate and civil officers, if necessary, by a summary judicial proceeding.
It appears to us, therefore, that the true purpose of the act of 1825 was to enable the owner of land, which was held by a tenant at will, to regain the possession of his land in a peaceable way after fourteen days’ notice, if the rent was in anear; or after as many days’ or weeks’ notice, as the interval between the times of payment of rent, if less than quarterly; and, at all events, after three months’ notice. The statute renders these rights clear and certain, which before were doubtful. There are no prohibitory words, providing that the estate shall not be terminated in any other mode; but as the intention was to make certain what was doubtful, and as it was a controverted question, whether a landlord could determine his will by an entry or demand of possession, without notice; we think the reasonable construction is, that this was the mode prescribed, and that by reasonable implication, it excludes other modes of determining the will by the act of the parties. In its scope and purpose, it is limited to the case of determining the will, and terminating the tenancy, by the act of the party desirous of doing so. But we think it leaves all other cases of determining the estate by act of law, as they stood before.
We are to keep steadily in view the distinction between determining the will, as a means of determining the estate, *574 and the termination of the estate by other legal means. Nor is there any necessary connection between the provisions of the Rev. Sts. c. 60, which furnish a mode by which either of the parties may determine his will, and those of Rev. Sts. c. 104, which provide a summary process for regaining possession of lands, after the determination of any lease at will or otheiwise. This remedy is given not merely to a lessor or landlord, but to any person immediately entitled to the possession.
The question then is, whether, if a lessor at will alienes his estate, such alienation defeats the right of the tenant at will to three months’ notice. This in fact constitutes the principal difficulty in this construction, founded upon the distinction between the determination of the tenancy at will, by act of law, and by the act of the party. It may be said, that if a lessor is desirous of getting rid speedily of an unwelcome tenant, he may convey away his estate, and his grantee may then enter, or have the summary process provided by statute, without giving the three months’ notice. If this should be done colorably or fraudulently, without any intent to alienate, it might, like other fraudulent and colorable acts, be held void.
But if the lessor at will does in fact alienate, it is clear, that by operation of law the tenancy is at an end. The alienee does not become the lessor at will of the former lessee at will; nor does ‘the tenant at will become tenant to the alienee. Who would be entitled to recover the rent of the tenant, after such alienation ? Not the alienee, who has become the owner in fee, because between him and the tenant there is no privity of contract or estate; nor the alienor, for he has entirely parted with all his interest and ceased to be lessor.
May we not distinguish, then, between the act of the party in determining his will, and thus directly determining the estate, as of his own power, which is limited and restricted by this statute, and his act in alienating, being a- lawful act, done alio intuitu, which he has a right to do, and to which the law attaches a collateral consequence, to wit, the determination of the estate at will ?
Any other construction than that above suggested would be injurious to the rights incident to the ownership of real *575 estate. When the owner of land permits a tenant at will to enter and occupy, it must be well known to the parties, because it is a well-established rule of law, that upon a conveyance of the estate the tenancy at will must terminate. The right of the purchaser would also be injuriously affected. He does not take a reversion, merely, and with it a legal right to the rent, as in case of the purchase of an estate subject to a lease for years, because there is no reversion. Is not the case, then, one in which a tenant at will takes a certain well-known legal interest, with a distinct notice, and subject to a distinct understanding, that if his landlord alienates the estate, the tenant must quit without the three months’ notice, having reserved to him his right to emblements, and other privileges of an outgoing tenant at will ?
The distinction, between determining the will as a direct purpose, and an act which indirectly leads to the same consequence, by operation of law, may seem a narrow one ; but we think it is founded on substantial grounds of law. A man cannot determine, as a distinct substantive act, with any legal effect, that he will pay his taxes in one town or in another; but he can determine in what town he will fix his domicil, and thus indirectly determine where he will pay his taxes, giving effect to the principle of law, which requires him to pay his taxes where he has his domicil. Makepeace v. Lee, cited in 5 Pick. 378. We think that this is the construction, which has been uniformly put upon this act, in all the cases which have been adjudged since its passage; though, perhaps, there is no case reported, where the principle has been fully stated and the reasons particularly given.
It will therefore be proper to review the cases upon this subject, which have occurred under the law giving a summary process for the landlord against the tenant.
The case of Dorrell v. Johnson, 17 Pick. 263, decided in 1835, was an action of trespass quare clausum, brought by the landlord after the expiration of a fixed term for which the estate was demised, and after an entry by the lessor.
The new provision of the statute under consideration was alluded to in the case of French v. Fuller, 23 Pick. 104, de *576 eided in 1839. The suit was trespass quarre clausum by a lessor at will, against a third person, for entering and demanding rent. It was held, that the action would not lie, because there was no injury to the freehold. But Wilde, J., in delivering the opinion, enters a caution, that since the statute (Rev. Sts. c. 60, § 26,) providing that an estate at will might be determined by either party, by giving three months’ notice in writing to the other, the possession of a tenant at will, before notice and for three months’ after, might not, as in the case of Starr v. Jackson, 11 Mass. 519, be held to be the possession of the lessor. “ The tenant,” the judge remarks, “ has not only the possession, but also the right of possession, and, in this respect, he stands on the same footing as a tenant for a term certain.” This remark, taken in the connection in which it was said, and with reference to the subject-matter, that is, as between landlord and tenant, where no notice had been given, may be true and correct. It is not laid down as a general proposition, but only “ in this respect,” that these cases are alike.
The next case in the order of time, which has been drawn into this discussion, is that of Kinsley v. Ames, 2 Met. 29, before the court in 1840. By the Rev. Sts. c. 104, as has been before stated, the three cases of forcible entry, forcible detainer, and tenant holding over, are classed together, and the same summary remedy is given in them all. The defendant, in the case above mentioned, having given a mortgage with a power of sale, which had passed through several hands, the estate was ultimately sold by an assignee, pursuant to the power, and with the assent of the mortgagor. The purchaser, under this sale, entered on a part of the premises, and gave notice to the defendant to surrender the possession ; but the latter refused, and resisted with menaces and force. It was held, that the defendant was not a tenant at will, and was not entitled to notice to quit; and the plaintiff having rightfully entered on a part of the premises, the forcible resistance'to his entry on the remainder constituted a forcible detainer, within the statute. The remarks of the court, in that case, were intended solely to point out t'ne distinction between the revised *577 statutes, and the law as it stood on the statute of 1825, c. 89, § 4, as to tenants at will and tenants at sufferance, in regard to a right to notice to quit. The object was not to show, that the process against Ames was brought against him as tenant at will or at sufferance, but to show that the entry of the purchaser in that case was rightful, and his possession lawful. The adjudication was founded on the other branch of the statute, giving a summary process, in case of a forcible detainer.
The next case, that of Hollis v. Pool, 3 Met. 350, which occurred in 1841, was a summary process, commenced before a justice of the peace, under the Rev. Sts. c. 104, §§ 2 and 4, where there had been a holding over by a tenant, after the determination of his lease. In this case, there was a paroi lease for a year, which, by the Rev. Sts. c. 59, § 29, could give no greater interest than an estate at will. It was contended, that when the lessor aliened the estate, the alienation determined the tenancy at will, by operation of law, and cases were cited to sustain that proposition. It was held, that after entry and demand of possession by the purchaser, and a refusal to surrender the possession, this process would lie at the suit of the purchaser.
The case is quite shortly reported; the grounds of the decision are not fully stated; and perhaps too much reliance was placed on the authority of Kinsley v. Ames, which, as already explained, was founded on another provision of the statute, namely, that relating to forcible detainer. The analogy intended to be suggested was this ; that in each of these cases, the defendant had ceased to be a tenant at will, and as such entitled by statute to a notice to quit. The ground upon which the court manifestly proceeded was, that upon the alienation of the estate, the tenancy at will previously existing, by which the defendant had held, was determined by operation of law; that the purchaser of the estate was the person then entitled to the possession of the premises; and, therefore, that he rightfully commenced the summary process before a justice of the peace to obtain the possession.
There was another ground, on which this case might have received the same decision, to wit, the paroi agreement of the defendant to quit, in case the owner should sell the estate, *578 which was not void, but valid and binding on the defendant This was adopted and approved in the case hereafter cited.
The next case, which is supposed to have a bearing upon this question, is that of Saunders v. Robinson, 5 Met. 343, decided in 1842, which was a complaint on the Rev. Sts. c. 104, for a forcible entry and detainer. The whole discussion turned upon the point of what is necessary to prove such an entry or detainer by strong hand, as to bring the case within that branch of the statute. It is remarked, at the close of the opinion, that it had been contended in the argument, that the case might have been sustained on that branch of the statute, which gives this process against a tenant holding over. But it was answered, that no such claim was made at the trial, or raised by the exceptions ; and no opinion was given on that subject.
The case of Meader v. Stone, 7 Met. 147, in 1843, was trespass quare clausum, brought by a tenant at will against the landlord. It appeared, that notice to quit for non-payment of rent had been given, and had expired; whereupon, it was held, that the right of the tenant at will to hold the premises ceased; that it was not his close ; and that the action would not lie.
We then come to the case of Hildreth v. Conant, 10 Met. 298, decided in 1845, which contains an ample commentary on the statutes in question, and points out the distinct provisions of the statute of 1825, and those of the Rev. Sts. c. 104. It decided, that the right of the lessee was determined, after the expiration of fourteen days’ notice to quit for nonpayment of rent; and that the person then entitled to the possession, a. lessee for years, was entitled to have the summary process provided by statute.
According to the views before stated, this case might probably have been sustained, without the fourteen days’ notice to quit, on the ground that the estate for years, made by the landlord to a third party, determined the estate at will by operation of law, and that no notice was necessary. There was such notice, however, which was a plain ground, upon which the summary process of the statute might be maintained, and upon that ground the decision was placed.
The case of Benedict v. Morse. 10 Met. 223, was determined *579 expressly on the ground, that an alienation of the estate by the lessor at will operated in law as a determination of the tenancy at will, and that the tenant was not entitled to notice to quit. It was a summary process under the statute, brought by the alienee of the lessor at will.
The case of Ferrin v. Kenney, 10 Met. 294, involves a discussion of the construction of the same statutes, and affirms the principles hereinbefore stated; especially the doctrine, that the death of either lessor or lessee, in a tenancy at will, is de facto a termination of the estate, and that no interest passes thereby to the heir or executor of the tenant at will.
The case of the Fifty Associates v. Howland, 11 Met. 99, decided in 1846, was a proceeding on the Rev. Sts. c. 104; in which it was determined, that the process did not lie in case of an alleged forfeiture for non-payment of rent, and that such forfeiture was not a termination of the term by its own limitation, within the meaning of the statute.
This case probably led to the passing of the statute of 1847, c. 267, which provides, that in all cases of neglect or refusal to pay rent, according to the terms of a written lease, fourteen days’ notice to quit shall be sufficient to determine the lease, and to en - title the landlord to the summary process of the Rev. Sts. c. 104, to recover possession. This enactment is accompanied with a proviso, that upon tender of all arrears of rent and costs, the process may be stayed, and the lease held to continue in full force.
It may be worthy of remark, that this statute, as also that of 1848, c. 142, respecting the tender and recognizance, when an appeal takes place under the Rev. Sts. c. 104, although they relate solely to the case of landlord and tenant, in referring to that statute and the proceedings under it, speak of them as the proceedings in case of “forcible entry and detainer” ; and this no doubt arises from the fact, that the chapter is only entitled “ Of forcible entry and detainer,” which does not embrace the other great head of landlord and tenant, although the subjects are very different, and had before been provided for in distinct statutes.
We then come to the case of Kelly v. Waite, 12 Met. 300, decided in 1847, which certainly deserves consideration. We *580 believe it has been suggested in argument, in some of the more recent cases, that something was decided in this case which was inconsistent with former cases.
But, we think, if we are right in the foregoing principles, that this case was correctly decided, and is in strict conformity with preceding decisions, though there is an expression or two in the report which requires explanation.
The action was trespass de bonis asportatis, for taking and carrying away hay from a meadow. The right to the hay, as personal property, depending upon the right of possession of the soil, on which it was raised, involved the question of the rights of the respective parties to that possession. There was evidence tending to show a demise to the defendant, for the season, by a paroi lease, under which he entered; that subsequently, the land was leased for years, that is, for a term certain, to one Dow, who entered, and gave notice of his title to the defendant; and that after such entry and notice, the defendant entered and took and carried away the hay. By the paroi lease, the defendant was tenant at will only; but by the subsequent lease for years to Dow, the estate at will was determined by act of law; and the defendant then became tenant at sufferance only. By the notice of that lease for years, and the entry of the lessee for years, and demand of possession by him, the defendant’s right of possession ceased; and by his subsequent entry, and taking of the hay, he became a trespasser.
The opinion was delivered by myself, and what requires correction is this: After stating that the oral lease gave an estate at will only, the opinion adds : “ Being an estate at the will of both parties, it was determinable by the lessor, by any act of ownership, inconsistent with its further continuance.” This, without qualification, would tend to mislead, by inti mating as the opinion of the court, that a lessor at will may terminate the estate by his own entry, as an act of ownership. Bu^ the remark must be understood with reference to the case; .an; ‘.he report, in the same sentence, immediately goes on to say, that “ it is a fixed rule, that if the < wner of land, which is in the occupation of a tenant at will, makes a feoffment, or a lease for years, to commence immediately, the estate at will is thereby *581 determined.” This is in conformity with the principle herein-before stated, that the estate is determined by operation of law.
"There is a clause at the close of the report, referring to the rule of the common law, that a lessor may determine the tenancy at will; which, if unconnected with the context and the facts of the case, might tend to mislead; but that is immediately followed by a passage which qualifies it, to wit, that a conveyance or lease of the premises, that is, a lease for years, is in law a determination of the lease at will. This case is then in harmony with the series of decisions.
The case of Morse v. Goddard, 13 Met. 177, has no very direct bearing upon the question under discussion. It however recognizes the principle, that an entry under a title paramount to that of the lessor ousts the lessee at will.
The case of Benedict v. Cutting, 13 Met. 181, was an action of debt on a recognizance, taken under the Rev. Sts. c. 104, before a justice of the peace, on removing a case under that statute to the court of common pleas. This decision may have led to the statute of 1848, c. 142, regulating such proceedings, but it does not affect the views above taken.
In the case of Babcock v. Albee, 13 Met. 273, the question was, whether, after the expiration of the three months’ notice under the statute, the agreement proved between the parties, for a further occupation by the tenant, was a waiver of the notice; and this was the only point decided.
The case of Tuttle v. Bean, 13 Met. 275, was a summary process, commenced in the police court of Lowell, under the Rev. Sts. c. 104; but it turned wholly upon the sufficiency of a tender and the waiver of a notice.
In the case of Whitney v. Gordon, 1 Cush. 266, the question was upon a waiver of notice by the landlord, under a tenancy at will. It is stated in the opinion given by myself, that by the Rev. Sts. c. 60, § 26, a tenancy at will can only be determined by three months’ notice; except in cases where there is a failure to pay the rent, or where, by agreement, the rent is payable at shorter intervals.
The same observations apply to this case as to a former one. The remark alluded to was not an abstract proposition, *582 embracing all modes of terminating a tenancy at will; but it was made in a case, where the question was between lessor and lessee, and how either could terminate the estate, as against the other, by his own act. It had no relation to the question touching the determination of an estate at will, by the act and operation of law.
The only other case, which we propose to mention, is the qtidte recent one of Creech v. Crockett, ante, 133. This case, decided the very important principle, that a paroi demise is not void ; that whilst such a paroi lease is to have no greater force or effect, than that of creating an estate at will, yet, as i;. many purposes, it is legal and valid; and if it is mutually agreed by paroi, between the lessor and lessee at will, that the tenancy at will shall cease and determine on the happening of a particular event, by the happening of such event, the tenancy at will is determined, and the lessor is entitled to possession without notice to quit. It follows, as a necessary consequence, that such lessor would be entitled to the benefit of the summary process, by complaint, under the Rev. Sts. c. 104, respecting lessees holding over after the determination of a tenancy, being within all the provisions therein prescribed.
As there are several other cases besides the one now before us, pending in different counties, and presenting questions under the law of landlord and tenant, we have thought it useful to review all the cases relating to the subject, in order to ascertain the true principle, on which the rules of law, applicable to a matter of such daily and practical importance, are founded; and we think, that although some of the cases are shortly and imperfectly stated, and expressions have been sometimes used by judges, which would lead to some doubt, yet that the adjudications have been uniform, in harmony with each other, and with the principles herein stated.
The result we think of the statute, and the cases under it, is, that although the subjects of forcible entry and detainer, and that of landlord and tenant, are embraced in the same chapter of the revised statutes, yet they are distinct subjects, and have no connection, except in the method of redress by a summary process to recover the possession.
*583 To warrant such a proceeding, and sustain a complaint, on this branch of the statute, the defendant must have stood in the relation of a lessee of the premises, the possession of which is sought to be recovered, under either a written or paroi lease, or that of a person holding under such lessee, who shall hold the demised premises, without right, after the determination of the lease, either by its own limitation, or by notice to quit.
If there is a written lease, the lessee is bound to quit, without notice, at its determination; if there is a paroi lease, and the lessee takes the premises for a certain term, or to determine upon a condition, the lessee is bound to quit, at the time limited, or on the happening of the condition ; and in either of these cases, if he holds over, he holds without right, and is liable to this process.
So in the case of a tenancy at will. It is an intrinsic quality in an estate at will, that it is personal, and cannot pass to an assignee; and that by an alienation in fee or for years, the estate at will is, ipso facto, determined and cannot subsist longer. This is a limitation of the estate, which is incident to its very nature; when therefore it is thus determined by operation of law, it is determined by its own limitation without notice.
But an estate at will may also be determined by the party by his own act, by a notice to quit conformably to the statute. to wit, in all cases by three months; by a notice equal to the interval stipulated for the payment of rent, if these intervals are less than three months; and by fourteen days’ notice, in cases of refusal or neglect to pay rent. Rev. Sts. c. 60, § 26. The same rule, of fourteen days’ notice, in case of neglect or refusal to pay rent, is extended to the case of a written lease by the statute of 1847, c. 207, § 1.
In all these cases, a holding over, after the expiration of the notices enumerated, by the tenant or any person holding under aim, is a holding without right, for which this process will lie.
The last consideration respects the person, who is entitled to have this summary process. From the act being sometimes called the landlord and tenant act, and from occasional expressions used in the cases, it has been supposed, that the relation of landlord and tenant must subsist, and that no one but the lessor could have this remedy. But this is clearly *584 settled otherwise by the statute, which provides, “that the person entitled to the premises, may be restored to the possession.” In case of alienation, therefore, though there is no relation of landlord and tenant between the alienee and the tenant at will, yet this process may be maintained.
We now proceed to apply the principles, thus derived from a general review of the legislation and the adjudicated cases on the subject, to the present case. It was a complaint, originally made to a justice of the peace, upon the Rev. Sts. c. 104, being the summary process provided by that chapter, to recover possession of certain premises, after the determination of a tenancy. The bill of exceptions states the case, as brought under the statute of forcible entry. But the case has nothing to do with forcible entry or forcible detainer, and this designation merely refers to the title of the chapter, which also embraces the other subject, namely, that of landlord and tenant. The process in the present case falls manifestly under the latter head.
It appears by the exceptions, that the defendant, having conveyed the estate to Goodrich in fee, took back from his grantee a contract, which was not an instrument ol defeasance, but an executory contract, to sell and convey the estate to the defendant, on certain terms. We can perceive no stipulation in this agreement, that the defendant should remain in possession, in the mean time, or for any time whatever. The bill of exceptions states, that the defendant occupied under a paroi agreement with Goodrich, until the latter conveyed away the estate, by a warranty deed, to the plaintiff. We think such paroi agreement could give the defendant no higher or greater estate, than that of a tenant at will; that the alienation of the estate by Goodrich, in fee, terminated the estate at will, by operation of law; and that the plaintiff being entitled to the possession, under the familiar rule, that the right of possession follows the right of property, was well entitled to ,the summary process provided for in this chapter to recover possession. The evidence offered by the defendant, if received, could not have varied this result; it was an offer of proof of a paroi agreement, which would not create a tenancy at will.

Exceptions overruled-

 The legislature of 1851, in the new practice act (St. 1851, c. 233, §§ 76 to 95,) repealed the provisions of the Rev. Sts. c. 104, relative to forcible entry and detainer, and substituted therefor, in substance, the old law as contained in the statute of 1784, c. 8, and reported l^r the commissioners for revising the statutes. But by the more recent legislation, (St. 1852, c. 312, § 86,) the old law is again repealed, and the provisions of the revised statutes restored.