## HUGUNIN *v.* McCUNNIFF et al.

TRESPASS — *quare clausum* — *plaintiff's possession.* To maintain trespass, *quare clausum*, the plaintiffs must have actual or constructive possession of the *locus in quo* at the date of the alleged trespasses.

H. and others, defendants, conveyed a mine to C., and delivered a shaft and level in the mine to plaintiffs as agent of C., retaining a certain other shaft and level in the same lode, not connected with the first, apparently claiming that part as upon another lode. C. contracted to sell to plaintiffs the same mine, and gave them a bond for a deed. Afterward, by sinking and stoping, defendants' took ore from the level and shaft retained by them, but the opening was not extended longitudinally. In trespass for the value of the ore so taken, *held*, that the plaintiffs had not actual or constructive possession of the *locus in quo*, because :

1. Throughout the length of the level retained by them, the defendants had actual possession of the vein, from the surface to the center of the earth.

2. The plaintiffs' possession, whether referred to the bond from C. to them, or as vendees and licensees of C., cannot be extended to the part actually occupied by defendants.

3. The circumstance that C. purchased for the benefit of plaintiffs cannot be effectual in a court of law, since he held the legal title.

*Title acquired after suit brought.* A title to the premises acquired by plaintiffs after the commencement of the suit, will not avail, since the rights of the parties must be determined by their position at the time of the trespasses.

## *Appeal from District Court, Clear Creek County.*

THE action was trespass, commenced August 30, 1872, by Thomas McCunniff and Eli S. Streeter, against James R. Hugunin, James Lees and David Lees. In the first count the plaintiffs declared for ore taken from the Elkhorn lode. In the second count, for ore taken from the Zillah lode. In the third count, for ore taken from the Zephyr lode. The fourth count was *de bonis asportatis.* The defendants pleaded not guilty and *liberum tenementum.* The evidence was very voluminous, and it will only be necessary to mention several points which were clearly established. But one lode was in controversy, and that had been cut as early as December, 1871, by the defendant Hugunin, in a tunnel opened by him and called the Eaglebird tunnel. This tun-

nel had been opened for a considerable distance beyond the line of the lode, and there was some evidence that the tunnel followed the lode, together with what was known and called the Eaglebird lode, for a distance of 25 or 30 feet, in a westerly direction.　East of the tunnel, a level had been opened for a short distance upon the line of the lode in controversy, and in this level, the defendant Hugunin sunk a shaft, called by him the Casket shaft.　At a considerable distance east on the same lode was what was called the Elkhorn shaft, and from that a level opened westerly upon the vein for a short distance.　A controversy existed respecting the title to the property between the plaintiffs and the defendant Hugunin and others, and William H. Cushman acting for and on behalf of the plaintiffs in this suit, but apparently without communicating to those with whom he was dealing, the fact that he was acting otherwise than for himself, purchased the property and paid therefor or agreed to pay $75,000.

The contract of purchase was evidenced by an agreement dated March 5, 1872, and several of the parties thereto who were not parties to this suit, but who had, apparently, authority from Hugunin, delivered the shaft and level last mentioned to the plaintiffs in this suit, who were acting as the agents of Cushman in that matter.　On the 16th day of March, 1872, the defendant Hugunin, and the others who claimed title to the lode, conveyed the same to Cushman.　The title was taken by Cushman in his own name, apparently, to secure him for certain moneys which he had advanced toward the purchase of the property.　On the 1st of May following, Cushman executed to plaintiffs a bond whereby he covenanted to convey the same property to them upon the payment of certain moneys due him in the time and manner therein specified.　Pursuant to this bond, on the 16th of May, 1873, which was long after this suit was begun, he executed a deed to the plaintiffs for the same property.　After the purchase by Cushman, in March, 1872, the plaintiffs opened the level westward from the Elkhorn shaft on the line of the vein, and about the 24th of August,

1872, came into the Casket shaft and level, which, as before stated, had been opened by defendant Hugunin and others to the eastward from the Eaglebird tunnel, and thus it was demonstrated that those openings were upon one and the same vein. After the purchase by Cushman and prior to the commencement of the suit, the defendants stoped out the vein to a considerable height in the Eaglebird tunnel and in the level eastward from that which the defendants opened before Cushman purchased and a shaft was sunk in that level, but it did not appear that this opening was extended eastward or westward by the defendants.

Many other points were mooted, but none of them are discussed in the opinion of the court.

The plaintiffs had judgment and the defendant Hugunin appealed.

Messrs. W. S. & L. C. ROCKWELL, for appellant.

Mr. W. R. GORSLINE, Mr. WILLARD TELLER and Mr. G. B. REED, for appellees.

WELLS, J.   Had this action been in the name of Cushman, it is altogether probable that the appellant would, by his deed of March 19th, 1872, be estopped to assert that the premises mentioned therein did not exist to the extent to which he had assumed to convey them ; or that his grantee did not, by the delivery of part in the name of all, become invested with exclusive possession of the whole. Other considerations seem, however, to govern the action of the present plaintiffs. By the strict rule which anciently obtained in the English courts, trespass *quare clausum fregit* lay only by one having a possession, in fact, of the premises trespassed upon, at the time of the trespasses. It may be inferred from what is said in *Sullivan* v. *Clements*, 1 Col. 261, that with us a constructive possession suffices ; and this accords with the current of decision in this country. Whether the defendants in error may maintain the present action depends, therefore, upon whether, at the date of the

alleged trespasses, they had possession, either actual or constructive, of the *locus in quo*. The evidence given upon the trial tended to show that the Elkhorn lode was discovered in the Eaglebird tunnel in December, A. D. 1871, and that, prior to the conveyance executed by Hugunin and his associates to Cushman, the defendant, drifting westward in the Eaglebird tunnel, had passed the point of junction for a considerable distance, and had also drifted westward, upon the Elkhorn crevice, which Hugunin then designated and claimed as the Casket, for the distance of 35 or 40 feet. Work on this drift was suspended before the conveyance to Cushman, and was never resumed, so that from the day of the delivery of possession to Cushman's agent, down to the bringing of this suit, the defendants' workings seem not to have advanced eastward upon the Elkhorn beyond this point; westward of this point, therefore, the defendants always retained actual possession of all their previous workings, both upon the Elkhorn and upon the Eaglebird, and eastward of this point the defendant never intruded upon the possession of the plaintiff, if plaintiff had possession there. Westward of this limit, too, as we conceive, the defendants' possession extended to all depths and levels from the surface to the center of the earth, so that the stoping done in the drift upon the Elkhorn, and the sinking of what is called the Casket shaft, was within the bounds of their own actual occupancy. The plaintiffs, as Cushman's vendees, had received possession of the discovery shaft upon the Elkhorn lode, and of all the workings proceeding from that shaft. The question is, therefore, whether out of their possession of this part of the lode the law implies possession of the residue, including what remained in possession of the defendants. The vendee of lands, in an executory contract which is silent in this respect, is not entitled to possession pending performance; and when admitted thereto, he is said to hold as licensee of his vendor. *Burnett* v. *Coldwell,* 9 Wall. 290. Whether his possession may properly be said to be a possession under the contract, so that the writing may be referred to, to

determine its limits and bounds, is perhaps not altogether clear. If, as was held in *Kellog* v. *Kellog*, 6 Barb. 116, and *Talbot* v. *Chamberlain*, 3 Paige, 219, his possession is to be regarded as a right entirely distinct from the equity given by the contract, then it would seem he must be regarded as holding only to the extent of his *pedis possessio*. In this view, the plaintiffs were not in possession of the *locus in quo*, and cannot maintain the present action. If, on the contrary, we refer their possession to the written contract of May 1, 1872, which was executed after their possession accrued, but in pursuance of a parol agreement previous thereto, its effect was to give to the plaintiffs a constructive possession of all within the limits prescribed in that writing, and without their *pedis possessio*, so far as not in actual possession by another. Constructive possession always yields to a possession in fact incompatible with the implication of law which creates it, and the plaintiffs are no better entitled to their action, under this view of the matter, than under the other; for the defendants, at the inception of the plaintiffs' right, had an actual possession, which, whether adverse to Cushman, or in subordination to his title, was inconsistent with the idea of a constructive possession in the plaintiffs; for the defendants, if not holding adversely to Cushman, must be regarded as his tenants at will; and the actual possession of tenant at will excludes the possibility of an implied possession in another tenant at will, or licensee, holding under the same proprietor. The right of the plaintiffs to the possession of what was delivered into their possession was not superior to the right of the defendants to the possession of that which they retained. Plaintiffs held as licensees merely, and the defendants in a capacity not inferior to that, certainly; and there is as good ground to obliterate the possession of the plaintiffs, as of the defendants. There is as good reason to extend the possession of the defendants, as of the plaintiffs. In neither view, therefore, can the defendants be said to have had a possession,

either actual or constructive of the *locus in quo*, at the date of the alleged trespasses.

Allusion was made in argument, to the circumstance, that from the beginning of the negotiation, which was consummated by his purchase, Cushman acted on behalf of the plaintiffs, and with the purpose that the title should eventually pass to them. But this does not affect the question ; the estate passed to him, and remained to him, at the time when these trespasses were committed ; he was entitled to the exclusive possession, not only as against the defendants and third persons, but as against the plaintiffs themselves, and the trust upon which he purchased cannot, in a court of law, be considered.

Neither does the conveyance, which, after the institution of the present action, Cushman executed to the plaintiffs, strengthen their case. The rights of both parties must be determined by their position at the time of the trespasses. Defendants, up to the date of that conveyance, were tenants at will to Cushman, and are accountable to him for the manner of their occupation, and to give the conveyance effect from a prior date will deprive Cushman of a right of action which before the conveyance was exclusively in him and with which he has not by express words parted ; or else to create in these plaintiffs a right of action cumulative to that in Cushman, which will be in effect to subject the defendants to a double accountability for the same transaction. If Cushman's conveyance shall, as against his tenant at will, have relation back to the contract of purchase, no controlling reason is perceived why the same effect might not be accorded to it as against Cushman himself, had he committed the acts complained of; this would be to create, by fiction of law, a constructive possession in those who had neither possession in fact nor the right of possession as against one in whom both were invested.

The cases of *McMellan* v. *Hafely*, 2 Car. & K. 89 ; *Davis* v. *Evans*, 5 Ired. 529 ; *Presnell* v. *Ranesom*, 8 id. 507 ; *Rich* v. *Baker*, 3 Denio, 80, appear to be in point.

What has been said proceeds upon the idea that the

defendants are not shown to have invaded the possession of the plaintiffs; if such invasion of their possession shall hereafter be shown, they will be entitled to recover such damages only as may serve to compensate them for that disturbance of their possession. For the injury occasioned to the substance of the estate, by the mining and carrying away of the ores, the defendants' landlord is alone entitled to recover. *Starr* v. *Jackson*, 11 Mass. 519; *Cannin* v. *Hatcher*, 1 Hill (S. C.), 260; *Spencer* v. *Weatherby*, 1 Jones (N. C.), 327; *Bulkley* v. *Dolbear*, 7 Conn. 233.

Inasmuch as the litigation, if it should proceed further, will probably be conducted between other parties, we reserve opinion of the other points presented by the record.

The judgment of the district court is reversed and the cause will be remanded for further proceedings, according to the views here expressed.

*Reversed.*