BURKHALTER *v.* OLIVER.

1. The act of 1889 requires that only such parts of the record as are material to a clear understanding of the errors complained of shall be specified in the bill of exceptions and sent up to this court. Where the error complained of is the refusal of a new trial, and the bill of exceptions sets forth the verdict and each ground of the motion for a new trial on which error is assigned, it is not necessary to require the verdict or the motion to be sent up in the transcript of the record; and the judge's certificate being in the requisite form, and these documents not being included amongst the parts of the record specified in the bill of exceptions, the writ of error will not be dismissed because they were not specified and sent up. *Lewis* v. *Clegg*, 87 *Ga.* 449, distinguished.

2. In an action of trespass for damages both to the possession and to the freehold, the plaintiff testifying, " I did not hold the title to the land that was damaged at the time it was damaged; I did not hold the title to the right of way of the railroad at the time it was being graded by defendant; I bought the bottom land that was damaged and the right of way that was graded knowing it was damaged," he cannot recover the damage done to the freehold; and the verdict being much in excess of the damage done to the possession alone, the court erred in not granting a new trial.

December 7, 1891.

Practice in Supreme Court. Trespass. Damages. Before Judge EVE. City court of Richmond county. February term, 1891.

Oliver sued Burkhalter for damages from entering

upon the land of Oliver, digging up and destroying his crop, excavating and removing the soil and causing embankments to be thrown up, thereby causing the water to be arrested in its flow off the land and to be dammed up on it. The jury found for the plaintiff $200. The defendant moved for a new trial upon the grounds that the verdict was contrary to law, evidence, etc., and was excessive. The motion was overruled, and he excepted.

Plaintiff's evidence was, in brief: In August, 1886, Burkhalter came on his land, over his protest, with a large force of hands to grade a railroad. The hands threw the dirt upon the land, covering the crops and making an embankment which caused the water to stand on the land and sour the soil and ruin the land. Plaintiff once cut through the embankment and let out the water, but it soon filled up again, and the water is still there and the land upon which it is is not fit for anything. He has been at work on the land ever since, but it is still in a bad condition. He was injured by the water standing on his land about $300. He had corn on part of the land, and the rest was in grain. Burkhalter went about three hundred yards through his crops, and the crops were ruined. Burkhalter promised to pay him for the corn that was ruined, but never did so, and he has never been paid for the damage to his land. About ten bushels of corn were covered by the dirt. About three acres were spoiled. It was plaintiff's own land. The title is not in his name, it never has been; one Davis holds the title to secure a debt. Plaintiff's bottom land was dug up. He does not know how many acres are in the bottom land, but thinks there is about an acre. The water covers about three acres. Plaintiff returns this land at $4 an acre. Burkhalter tore up the corn, which was ripe. Plaintiff asked him to have the corn pulled up and laid to one side. Three or four thousand feet was the distance Burkhalter went

through the place, the length of the embankment being about thirty-five hundred feet. There are about four acres in the bottom, and plaintiff does not know how much of it was ruined, it was covered up; there are one hundred and eighty-seven acres in his place. Davis holds the deed to the place to secure a debt; plaintiff holds the title to the line of the railroad. Plaintiff had the title to the line of the railway and to the land that was damaged. He did not hold the title to the land that was damaged at the time it was damaged. He did not hold the title to the right of way of the railroad at the time it was being graded by Burkhalter. Plaintiff bought the bottom land that was damaged and the right of way after it was graded, knowing that it was damaged. He has never held the title to the land, does not hold it now; Davis holds the title now and did at the time it was damaged; the title never has been in plaintiff's name. Since Burkhalter cut up the land there are but two places where plaintiff can cross from one part of his plantation to the other. When the corn was pulled up it was covered up; the hands did not throw the dirt out far enough, and it covered it up. Plaintiff does not know how much corn was ruined; he used some of it, but not much; Burkhalter said there were ten bushels, and that he would pay plaintiff for it. Corn was worth at that time about seventy-five or eighty cents a bushel. A witness for plaintiff testified that the water is still on the land. He thought the land had been damaged about $250 or $300; but further testified that his land was better than Oliver's, and he returned his land for taxation at $5 per acre. Another testified that there were three or four acres in the whole bottom, and he thought the land was damaged; if it had been his, he would not have had it done for less than $200 or $300. Another, that Oliver had been damaged about $250, and witness thought it was very inconvenient to

have to go way around to get through your place; that
the cut had spoiled plaintiff's plantation; that plaintiff
could not get from one part of it as conveniently as
formerly, but had to go around about a quarter of a
mile; that the cut was so that plaintiff could not get
across it, and to make a good crossing through the em-
bankment would cost about $5.

The testimony for defendant was to the effect that
plaintiff did not object to the work being done, but said
he was glad the railroad was going through his land
but he hoped he would get paid for it; that about four
or five bushels of his corn was ruined; and that plaintiff
never made any demand on Burkhalter for damages.

Twiggs & Verdery, for plaintiff in error, cited 40 *Ga.*
481; 48 *Ga.* 42; 109 Mass. 527, 537; 17 Pick. 75.

C. Heard and J. C. C. Black, *contra*, cited 23 *Ga.*
590; Code, §§3015, 3066.

Bleckley, Chief Justice.

1. Prior to the act of 1889, there had to be brought
to this court a complete transcript of the record in the
court below of the case to be reviewed, but that act re-
stricts the transcript to such parts of the record as are
specified in the bill of exceptions, and no part is to be
specified unless the same be material to a clear under-
standing of the errors complained of. Acts of 1889, p.
114. In the present case the bill of exceptions states
that the trial below resulted in a verdict against the de-
fendant for the sum of $200; and that a motion for a
new trial was made by the defendant and overruled by
the court, a brief of the evidence having been approved,
filed and made a part of the record. Error is assigned
on the refusal of the court to grant a new trial upon
each ground contained in the motion, the exact language
of each ground being quoted in the assignment of errors.
The parts of the record specified as material to a clear

understanding of the errors complained of are the petition, the brief of evidence, and the order overruling the motion for a new trial  The certificate of the judge is in the form prescribed by the statute.  We know by the certificate that the bill of exceptions is true, and consequently we know that the verdict was for $200; that a motion for a new trial was made and denied, and what each ground of the motion was.  We also know that in the opinion of the judge who certified the bill of exceptions, no part of the record is material to a clear understanding of the errors complained of, except the parts specified.  These parts, including the brief of evidence, all appear in the transcript duly certified by the clerk.  On this state of facts we can have no hesitation in denying the motion to dismiss the writ of error, that motion being based on the ground that the verdict and the motion for a new trial are not specified as parts of the record to be sent up, and are not embraced in the transcript.  That certain facts, such as the amount of a verdict and the grounds of a motion for a new trial, appear of record, will not hinder the same facts from being stated in the bill of exceptions and verified by the certificate of the judge.  True, this could not be done under the prior law, and may not be the best practice under the act of 1889, but there is certainly nothing in that act which prohibits it, and the general spirit and policy of the act is to have no more of the record brought up than is necessary.  What was said in *Lewis* v. *Clegg,* 87 *Ga.* 449, is to be understood with reference to the facts of that case.  In that case no transcript whatever was sent up.  The bill of exceptions set out what purported to be copies of various parts of the record, without otherwise specifying anything as material, and the judge's certificate was in the usual form.  It directed a complete copy of such parts of the record as were in the bill of exceptions specified, to be sent up, and therefore did not

attempt to verify the copies set out in the bill of excep-
tions, but left the verification to rest on an official tran-
script to be furnished by the clerk.   So far from certi-
fying that these parts were not necessary to be brought
up by transcript, the judge certified in effect that they
were necessary to be so brought up, for he directed the
clerk to send them.   Here, on the contrary, the judge
virtually says that what appears in the bill of exceptions
concerning the verdict and the motion for a new trial is
enough when taken in connection with the evidence and
those parts of the record which are specified to be sent
up, and which the clerk has sent up by transcript.   And
it *is* enough.   We have no difficulty in arriving at a
clear understanding of each and every error complained
of.   Nothing is wanting which is requisite to enlighten
us fully.   The motion to dismiss the writ of error is de-
nied.   Let it be remembered that the writ of error itself,
that is, the certificate of the judge annexed to the bill
of exceptions, is not defective, the same being in the
form prescribed by the statute.

2. The action was for damages both to the possession
and to the freehold.   The plaintiff, being a witness in
his own behalf, testified:   "I did not hold the title to
the land that was damaged at the time it was damaged;
I did not hold the title to the right of way of the rail-
road at the time it was being graded by the defendant;
I bought the bottom land that was damaged and the
right of way that was graded knowing that it was dam-
aged."   To reconcile these statements with other parts of
his testimony may be difficult, but they are so clear and
definite that there can be no good reason for not tak-
ing them as true.   He was the only witness who testi-
fied touching these facts, and if his evidence as a whole
bears two constructions, the one which is less favorable
to his interest ought to be adopted.   *Baggett* v. *Trulock*,
77 *Ga.* 369.   Though he was in possession when the

trespass was committed, it affirmatively appearing that he was not then the owner of the freehold but bought it afterwards, his recovery should be restricted to the damages which he himself sustained as the tenant in possession, the right of recovery for damage by permanent injury to the freehold being in the person who then owned the premises. Code, §§3015, 3016; 1 Sedgwick, Damages, §69; 3 *Id.* §926; 2 Rorer, Railroads, 786. It will be noticed that this action is not against the railroad company, but against the contractor who graded and constructed the road-bed; and it will be observed also that the trespass complained of is not a continuous but a completed trespass. For these reasons the question involved in Pappenheim *v.* Metropolitan Rwy. Co., decided by the Court of Appeals of New York, 28 N. E. Rep. 518, as to the right of a vendee to recover for a trespass begun during the ownership of his vendor, and continued up to and after the time of the vendee's purchase, does not arise. That is a question of grave import. The case just referred to decides it in the affirmative; but whether the law of Georgia in this respect coincides with that of New York, is open for future determination. Under the evidence in the record the amount of the verdict is much in excess of the damage done to the possession of the plaintiff below, and for this reason the court erred in not granting a new trial.

<div align="right">

*Judgment reversed.*