[Nos. 1376-78.    December 8, 1911.]

CALEDONIAN COAL CO., Appellee and Cross Appellant, v. ROCKY CLIFF MINING COMPANY, et al, Appellants and Cross Appellees.

### SYLLABUS. (BY THE COURT).

1. Coal and minerals in place are land and their removal by a trespasser constitutes a permanent injury to the

freehold for which the owner of the fee is alone entitled to recover damages.

2. Proof of more than simple possession of the land upon which trespasses complained of are committed, is necessary to support an action brought to recover the value of coal unlawfully extracted by trespassers and converted to their own use.

3. Where A. goes into possession of land in pursuance of an agreement to purchase the land of B., the owner thereof, and with B.'s consent, begins to mine coal therefrom, A.'s possession is that of a mere licensee.

4. A license to mine coal does not convey or grant to the licensee any interest in the coal until the licensee has mined it.

5. A right of action for a trespass to land is not assigned by a subsequent conveyance of the land. Following U. S. v. Loughren, 172 U. S. 206.

6. The plaintiff entered into possession of the land pursuant to an agreement or understanding with the owner for the purchase of the same. It knew in August, 1904, that defendants had, and were then taking coal from the land. On April 11th, 1905, it took a deed from the owner for the land: Held that, in the absence of a binding contract between plaintiff and its vendor for the purchase of the land, prior to the discovery by plaintiff that the defendants had taken coal from the land, it could not recover for the value of the coal taken by defendants prior to the date it acquired title.

7. The evidence in this case examined and, held, that the trial court committed error as to the amount of coal for which a recovery was allowed.

8. The evidence held to support a finding by the trial court that plaintiff is entitled to recover 12½ cents per ton for the coal taken by defendants.

Appeal from the District Court for McKinley County, before IRA A. ABBOTT, Associate Justice. Affirmed on rehearing.

Coal Co. v. Mining Co., 16 N. M. 517.

E. W. DOBSON for Appellants.

The right of action for trespass to land is not assigned by subsequent conveyance of the land. Schuylkill & S. Co. v. Decker, 2 Watts. 343.

Plaintiff's possession being merely a right of temporary possession it could only recover for injuries to that possession and not for injury to the freehold. Bloom v. Stenner, 50 N. J. L. 59; Frisbee v. Marshall, 122 N. Car. 760; Colorado Consolidated Land & Water Co. v. Morris, 1 Col. App. 401; Burkhalter v. Oliver, 88 Ga. 473; Bagget v. Trulock, 77 Ga. 369; 1 Sedg. Dam. 69; 3 Sedg. Dam. 926; 2 Ror. R. 786; Missouri Lumber & Mining Co. v. Zeitinger, 45 Mo. App. 114; Wadleigh v. Marathon County Bank, 17 N. W. 314; Anderson v. Thunder Bay Boom Co., 23 N. W. 776.

The measure of damages recoverable in an action of trespass for an injury to realty by an inadvertant removal of part of coal is its value as a part of the realty and not as a chattel after its removal. Warrior Coal Co. v. Mabel Min. Co., 20 South. 918.

FRANK W. CLANCY for Appellee.

As against a wrongdoer, actual possession is a sufficient title for the plaintiff. Graham v. Peat, 1 East 246; Chambers v. Donaldson, 11 East 74; Branch v. Doane, 18 Conn. 242; Bedden v. Clark, 76 Ill. 338; Hayward v. Sedgley, 14 Me. 439; Savage v. Holyoke, 59 Me. 345; Hunt v. Rich, 38 Me. 199; First Parish v. Smith, 14 Pick. 301; Kilborn v. Rewee, 8 Gray 417; Sweetland v. Stetson, 115 Mass. 49; Fowler v. Owen, 68 N. H. 272; Chandler v. Walker, 21 N. H. 282; Duncan v. Potts, 5 Stew. and Port. 82; Finch v. Alston, 2 Stew. and Port. 83.

The proper measure of damages in this case is the full value of the coal. Woodenware Co. v. U. S., 106 U. S. 432; Pine River Co. v. U. S., 186 U. S. 293; U. S. v. R. R. Co., 192 U. S. 541; United Coal Co. v. Coal Co., 24 Colo. 122; Holt v. Hayes, 73 S. W. 111; U. S. v.

Homestake Co., 117 Fed. 482; Durant Co. v. Percy, 93 Fed. 167; Ivy Coal Co. v. Alabama Coal Co., 135 Ala. 582; Martin v. Porter, 5 M. & W. 351; Morgan v. Powell, 3 A. & E. 278; White v. Yawkey, 108 Ala. 370; Antoine Co. v. Ridge, 23 Cal. 219; Ellis v. Tone, 58 Cal. 289; Hindrey v. Williams, 9 Colo. 371; Clark v. Miller, 4 Wend. 629; Appeal of Harris, 12 Atl. 743; Hendrickson v. Anderson, 5 Jones 249.

### STATEMENT OF FACTS.

The complaint in this cause, framed under the code of civil procedure, sets up, in substance, what would have been at common law an action of trespass *quare clausum fregit*. It shows, after stating the names and domicile of the parties, that plaintiff, the Caledonian Coal Company, was, during the actions of the defendants, the Rocky Cliff Coal Mining Company and Stephen Canavan, complained of, lawfully entitled to the possession of certain lands described according to the public land surveys, situate in the County of McKinley. It then sets up that, in 1904, defendants entered upon said land, beneath the surface thereof, and mined and extracted large quantities of coal, which they converted to their own use, the quantity being, to the best of the knowledge, information and belief of plaintiff, about 50,800 tons, of the value of $87,844, and that the mining and the taking of the coal by defendants were without any permission, consent or agreement on the part of plaintiff, and in violation of plaintiff's property rights. The complaint contained a prayer for an accounting of the amount and value of the coal so wrongfully taken, and for judgment for the value of the coal with interest and costs.

The defendants answered that they were not advised as to whether or not plaintiff was the owner of the land described in the complaint and called for strict proof thereof. The answer denied that the defendants had entered upon the lands described in the complaint in the year 1904 and extracted therefrom the amount of coal, of the value alleged in the complaint and further denied that the mining and taking of coal by them was without

the permission, consent and agreement of the plaintiff, and alleged that all the coal mined and taken by them from said lands was taken by and with the consent and agreement of plaintiff. They further alleged that the only demand plaintiff ever made upon them for the coal was on a royalty basis of 12½ cents per ton, and that plaintiff verbally agreed with defendants that they could take the coal from the lands described in the complaint and that defendants were to pay $20.00 per acre for the land to plaintiff.

Plaintiff replied to the answer denying any demand or claim for the coal on a royalty basis of 12½ cents per ton, but alleged that there was an offer by plaintiff to compromise its claim on such a basis, which offer was refused and rejected by defendants. The reply also denied any agreement with defendants that they could take the coal or that defendants were to pay $20.00 per acre as alleged in the answer.

A jury having been waived, the case was referred to an examiner for the taking of proofs and thereafter the court made findings of fact and conclusions of law thereon.

The court found that the land described in the complaint had been granted by Congress to the Atlantic and Pacific Railroad Company, and that plaintiff acquired title thereto by a deed dated April 11th, 1905. The court's fourth finding of fact was as follows: "4. The court finds that plaintiff, in pursuance of an agreement or understanding with railroad company, which does not appear to have been in writing, except so far as it is embodied in correspondence between the parties for the purchase by plaintiff of said south half of said section eleven, and with the knowledge and consent of the railroad company, entered upon said south half of said section eleven and begun the taking of coal therefrom, as early as the latter part of 1898, and had such use of said land continuously up to the time when it acquired title thereto." The court further found that the defendants, some time prior to August, 1904, entered into plaintiff's land and began taking coal therefrom, and that in August, 1904, the plaintiff notified defendants that they were on plaintiff's land and

told them not to drive their entries any farther, but that defendants continued to mine coal on plaintiff's land until some time in November, 1905; that after August, 1904, the plaintiff never took any steps to stop defendants taking coal from plaintiff's land except by demands of payment therefor, but other than may be inferred from the fact that plaintiff did not stop defendants from further mining on its land, the court finds that there was no agreement or contract between plaintiff and defendants as to the taking of coal by defendants from plaintiff's land, nor any understanding relative thereto. The court found that prior to October 2, 1905, defendants extracted from plaintiff's ground and applied to their own use 31,256.76 tons of coal, and that the value of said coal after it was taken out was $1.75 per ton; that of this coal, 6,932 tons were taken out after June 26, 1905, but that there is no evidence from which it can be determined how much of said coal was mined between April 11, 1905, and June 26, 1905. The court further found that on June 26, 1905, plaintiff presented to defendant Canavan, a bill for said coal mined on its land up to that time, to the amount of 21,857 tons, at 12½ cents per ton, and that on July 19, August 8, and October 14, of the same year, plaintiff renewed the same demand; that on January 19, 1906, plaintiff requested of defendant Canavan to let it know how much he claimed to have mined and what he was willing to pay for it; that on March 19, 1906, defendant Canavan offered to pay $25 per acre for the land mined; that on March 20, 1906, plaintiff, in writing, rejected Canavan's offer, and stated that it would be constrained to sue for the amount due on a royalty basis of 12½ cents per ton for the coal mined from its land; and that defendants never consented or agreed to pay said royalty so demanded by plaintiff; that 12½ cents per ton was, in 1905, and had been for years prior thereto, the usual and customary royalty paid in the vicinity of the coal mines in question. The court further found that it was impossible to state from the evidence how much coal was extracted by defendants from plaintiff's ground after October 2, 1905.

From the foregoing facts, the court concluded as a matter of law, that the plaintiff was entitled to recover from the defendants 12½ cents per ton for the tons of coal definitely shown by the evidence to have been by defendants extracted from plaintiff's ground and converted to their own use, with interest thereon at 6 per cent for five years, the number of such tons being 28,789, the amount to be recovered being $3,593.62, making, with interest as aforesaid, $4,678.21, with costs of suit, for which amount so found the court rendered judgment.

Both parties appeal from the judgment of the court. The plaintiff claims that the court erred in not rendering judgment in its favor (a) for the full amount of coal found by the court to have been extracted by defendants from the land in question, to-wit: 31,256.76 tons, and (b) for the full value of the coal as found by the court to be $1.75 per ton.

The defendants claim that the court erred (a) in finding as a matter of law that plaintiff was entitled to recover for any coal extracted from the south half of section eleven prior to April 11, 1905, the date the plaintiff received the deed from the railroad company, and (b) the court erred in holding as a conclusion of law that plaintiff was entitled to recover for any coal in excess of 6,932 tons.

### OPINION OF THE COURT.

MECHEM, J.—(After making the foregoing statement of fact). 1. The first question presented in this case is whether or not the plaintiff was entitled to recover for the coal taken by the defendants prior to April 11, 1905, the date of the deed to the land from the railroad company to the plaintiff. The position of counsel for the plaintiff with respect to this question is stated in his brief as follows: "All that is necessary to support a plaintiff's action to recover damages as against a defendant who is a mere trespasser without any title or right, is the simple possession of the property upon which the trespasses are committed." The plaintiff did not allege or prove, nor did the court find, that it was injured as to its possessory

rights, that is, by reason of a disturbance of its possession simply. The action is brought to recover for the value of coal removed from the land, and if plaintiff is to recover the value of that coal, it must show some property right or interest in the coal which is not established by possession of the land merely. The reason of this is that coal and minerals in place are land, (Caldwell v. Fulton, 31 Pa. St. 475; & 2 Am. Dec. 760) and their removal by a trespasser constitutes a permanent injury to the freehold, for which injury the owner of the fee is alone entitled to recover. Hugunin v. McCunniff, 2 Colo. 367; 14 Mor. Min. Rep. 463; Starr v. Jackson, 11 Mass. 519; Wadleigh, v. Marathon County Bank, 17 N. W. (Wis.) 314; Burkhalter v. Oliver, 88 Ga. 473; 14 S. E. 704.

2. The court found that plaintiff had, "in pursuance of an agreement or understanding with said railroad company, which does not appear to have been in writing except so far as embodied in correspondence between the parties, for the purchase by plaintiff of said south half of said section eleven, and with the knowledge and consent of the railroad company, entered upon said south half of said section eleven and began taking coal therefrom as early as the latter part of 1898." According to this finding the construction most favorable to plaintiff, of which it is susceptible, the railroad company granted nothing more than a license to the plaintiff to mine coal from the land and did not grant plaintiff any property in the coal until it had mined it. As long as the coal remained in place, it was the property of the railroad company. 27 Cyc. 690; Grubb v. Bayard, 11 Fed. Case No. 5849; Baker v. Hart, 12 L. R. A. (N. Y.) 60; Arnold v. Bennett, 92 Mo. App. 156; East Jersey Iron Co. v. Wright, 32 N. J. Eq. 248; Funk v. Haldman, 53 Pa. St. 229. The plaintiff could not recover damages on the theory that it had title to the coal. No doubt, as was said in Baker v. Hart, supra, the act of the defendants was an infringement of plaintiff's rights, for which it could recover damages, as it in fact sustained, but it proved none.

Coal Co. v. Mining Co., 16 N. M. 517.

3. Continuing the argument under this head, counsel for plaintiff says: "It is not to be tolerated that defendants, mere wanton wrong-doers, can set up that the title was in the railroad company, and that, therefore, they were at liberty to take the coal, thus diminishing the value of the land which plaintiff had agreed to purchase and was occupying and using under that agreement." If, as before stated, the title to the coal before the plaintiff received a deed from the railroad company was in the railroad company, a right to action to recover for the same was also in the railroad company and such right did not pass by the deed. U. S. v. Laughren, 172 U. S. 206; Wadleigh v. Marathon County Bank, supra,; Burkhalter v. Oliver, supra; Chicago & Alton Ry. Co. v. Sarah Maher, 91 Ill. 312; Hagunin v. McCunniff, supra. It is clear that if the title to the coal converted by defendants was in the railroad company, a recovery by the plaintiff would be no bar to an action by the real owner, the railroad company. The plaintiff knew, at the time that it received a deed from the railroad company, that defendants had removed great quantities of coal from the land, thus diminishing its value. It bought the lands so damaged and reduced in value with full knowledge of that condition. The defendants are not responsible for the purchase by plaintiff of the land. There is nothing in the findings of facts upon which it could be determined as a matter of law that the position of plaintiff with respect to its rights to the land before the delivery of the deed from the railroad company was other than a mere license. There is nothing to show any conveyance to it of any interest in the land or the coal by reason of its being permitted by the railroad to take possession and mine. There is no evidence of any binding contract between the railroad company and plaintiff for the purchase of the property in existence prior to the discovery by plaintiff that defendants had taken coal from the land to the extent that the making and delivery of a conveyance would have been a mere formality to the passing of the title, so that the plaintiff being under a binding contract to buy the land whether or no, it was damaged

by the acts of the defendants to the extent of the value of the coal removed. We do not understand the position of defendants to be that because the plaintiff did not have title they were at liberty to take coal from the land, but they contend that they are not liable to the plaintiff for the value of the coal, but, if at all, to the railroad company. And we believe this to be the correct view of the case. We, therefore, hold that the plaintiff is not entitled to recover the value of the coal mined by defendants prior to April 11, 1905, when plaintiff acquired title to the land.

4. The court found that defendants had wrongfully removed from plaintiff's ground and converted to their own use, in all, 31,256.76 tons of coal, covering a period from sometime in August, 1904, to October 2, 1905, and that of this 6,932 tons were mined after June 26, 1905, and of the balance, the court found that it was impossible to ascertain from the evidence how much was taken between April 11, 1905, and June 26, 1905. From this, it is evident that the court erred in rendering judgment in favor of plaintiff on the basis of 28,789 tons, because, as we have shown, plaintiff has not established any right, title or interest in the coal mined prior to April 11, 1905, to entitle it to recover damages on the theory that it owned the coal, the only damages alleged or attempted to be established by it. And, as it was impossible for the court to state how much coal was extracted by defendants between April 11 and June 26, judgment should have been on the basis of 6,932 tons, that amount being definitely ascertained.

5. We have carefully examined the record in this case and find that there is substantial evidence to support the finding of the court that the plaintiff is entitled to recover the sum of 12½c. per ton, and no more, for the coal mined by defendants and converted to their own use after June 26, 1905. The judgment of the lower court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Coal Co. v. Mining Co., 16 N. M. 517.

### OPINION ON MOTION FOR REHEARING.

MECHEM, J.—The appellant, by a motion for rehearing, calls the court's attention to certain matters contained in the record which, in counsel's opinion, fill the requirements of the conclusion announced in the original opinion filed in this case, that to entitle appellant to recover it was not sufficient that it establish possession under an agreement to purchase, but that it must be shown that such agreement was binding upon it to buy the land so that the execution and delivery to it of a deed was a mere formality to the passing of the title. No mention was made in the brief of either party of such an agreement, the case being tried upon appellant's theory that mere possession, if rightful, entitled it to recover. However, as the trial court made a finding that the appellant had possession under an agreement, and rendered judgment on the theory that possession by appellant under such agreement gave it the right to recover for coal mined previous to the execution of the deed to it for the land, it would seem that if the record shows, as appellant now contends it does, that appellant was, at the time it took title from the railroad company, under a binding obligation to buy the land, so that it could not have refused to buy in view of the injuries committed by the appellees, then, in that event, the judgment was right and should be sustained. If facts were before the court sufficient to sustain its judgment, they should be considered as having been the basis of the judgment notwithstanding the theories of counsel trying the case. The record shows that the appellant and the railroad company, in the year 1903, agreed to arbitrate the question whether or not there was an enforceable contract between them for the sale by the railroad company and the purchase by the appellant of the south half of section eleven, the tract mentioned in the original opinion. The arbitrator to whom this question was submitted found, as to the contract of sale, that "the Caledonian Coal Company could have enforced that contract at any time after it was made, and, conversely the railroad company could have compelled the Caledonian Company to take and pay for the land." The arbitrator

ordered the performance of the contract which was per-
formed by the execution of the deed of April 11, 1905,
mentioned in the original opinion.    This would seem to
put the matter at rest, but the appellees claim that as a
matter of fact the appellant only paid for 217 acres of
land out of the south half of section eleven, that by an
understanding between the railroad company and appel-
lants it was agreed that the south line of section eleven
was a crooked line so that between that line and what
would have been the south line of section eleven had it
been a square or typical section, there were 103 acres
which the appellant did not pay for, and that the coal
taken by appellees was mined in that area of 103 acres
It also appears from the record that the appellant, at
the time it entered the south half of section eleven, in
1898, was the owner in fee of the northern tier of forty
acre subdivisions in section fourteen, which joins section
eleven on the south.    That by mistake of the government
surveyors, the east line of section fourteen, by monu-
ments on the ground measured 5990 instead of 5280 feet
and this excess diminished the area of section eleven to that
extent.    This line was the subject of a discussion by this
court in the case of Canavan v. Dugan, 10 N. M. 316,
but did not involve sections eleven and fourteen.    If the
so-called crooked line was the dividing line between sec-
tions eleven and fourteen, then the appellant was the
owner of the land from which the coal was taken, for the
northern forty acre tract included it. . It seems that the
court in the case of Canavan v. Dugan, having decided the
crooked line was not the correct line, the appellant
brought suit against the railroad company, in which it
sought to foreclose the railroad company from claiming
or exercising any right to the 103 acres of land above
referred to.    This action was included in the arbitration
and by the arbitrator decided that, as between the appel-
lant and the railroad company, the so-called crooked line
was the dividing line between their lands.    No question
is made but that the award was conclusive as between
the parties to it, so if the contention of appellees is cor-
rect the appellant was the actual owner of the land; if

they are not correct, the appellant was under an enforce-able and binding contract to buy it, so that it is entitled to recover for the value of the coal taken from the land by appellees. The court below found that appellees had mined and converted to their own use 28,789 tons of coal, for which appellant is entitled to recover on the basis of 12½ cents per ton royalty. To this extent the former opinion of the court is modified and the judgment of the court below is accordingly affirmed.